



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 5, 2016**

_____

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 14-34874-BJH-11 |
| COUTURE HOTEL CORPORATION | § | |
| a/k/a HUGH BLACK-ST MARY | § | |
| ENTERPRISES, INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
### UNDER 11 U.S.C. § 1129 CONFIRMING DEBTOR'S
### FIFTH AMENDED JOINT PLAN OF REORGANIZATION

WHEREAS, on June 8, 2015, Couture Hotel Corporation a/k/a Hugh Black—St Mary Enterprises, Inc. (the "Debtor") debtor and debtor-in-possession in the above-referenced case, filed its Second Amended Plan of Reorganization (the "Second Amended Plan")[Docket No. 261][1] and the Second Amended Disclosure Statement in Support of Debtor's Second Amended Plan [Docket No. 262]; and

_____

[1]    All terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

WHEREAS, on June 10, 2015, the Debtor filed its Second Amended Disclosure Statement, as Modified, in Support of Second Amended Plan of Reorganization (the "Disclosure Statement")[Docket No. 264]; and

WHEREAS, on June 10, 2015, this Court entered an order approving the adequacy of the Disclosure Statement in accordance with Section 1125 of the Bankruptcy Code, setting forth procedures for soliciting approval of the Plan, and setting deadlines for objections to and voting on the Plan (the "Disclosure Statement Order") [Docket No. 265]; and

WHEREAS, on June 11, 2015, in accordance with the Disclosure Statement Order, the Debtor caused the Second Amended Plan, Disclosure Statement, Disclosure Statement Order and a ballot for voting to accept or reject the Plan (the "Solicitation Package") to be transmitted to holders of Claims in all Classes of the Debtor; and

WHEREAS, prior to the Confirmation Hearings, the Debtor filed the following modifications to the Plan (the "Prior Modifications"):

- Notice of Modification to Second Amended Plan of Reorganization [Docket No. 308];
- Notice of Second Modifications to Second Amended Plan of Reorganization [Docket No. 330];
- Notice of Third Modification to Second Amended Plan of Reorganization [Docket No. 375];

(together with the Second Amended Plan, the "Prior Plan"); and

WHEREAS, pursuant to Bankruptcy Code section 1128(a), the Court held a hearing commencing on July 28, 2015, and continuing on July 29, 2015 and July 30, 2015 to consider confirmation of the Prior Plan (collectively, the "July Confirmation Hearing"); and

WHEREAS, on September 2, 2015, the Court entered its Memorandum Opinion (the "September 2 Confirmation Opinion") denying confirmation of the Prior Plan; and

WHEREAS, on December 18, 2015, the Debtor filed its Fourth Amended Plan of Reorganization (the "Fourth Amended Plan")[Docket No. 419] and Motion to Approve Fourth Amended Plan of Reorganization (the "Approval Motion")[Docket No. 420]; and

WHEREAS, all objections to the Plan were withdrawn, resolved, or overruled; and

WHEREAS, on January 4, 2016, the Court held a hearing to consider the Approval Motion and confirmation of the Debtor's plan of reorganization (the "Final Confirmation Hearing" and together with the July Confirmation Hearing, the "Confirmation Hearings"); and

WHEREAS, on January 5, 2016, the Debtor filed it Fifth Amended Plan of Reorganization (the "Plan")[Docket No. 425] that contains all changes and modifications announced on the record at the Final Confirmation Hearing.

NOW, THEREFORE, based upon the Court's review and consideration of (i) the submissions previously filed with the Court; (ii) the record of the Confirmation Hearings (including all of the evidence proffered or adduced at the hearings, any declarations, pleadings, briefs, memoranda, stipulations, and other submissions filed in connection therewith, and the arguments of counsel made at the hearing); and (iii) the record in this Chapter 11 Case; and after due deliberation thereon, and good cause appearing therefore,

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THE COURT FINDS AND CONCLUDES THAT:**[2]

**Jurisdiction and Notice**

A.    <u>Findings and Conclusions</u>.    The findings and conclusions set fort herein and in the record of the Confirmation Hearings, including but not limited to the findings of the Court in

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

the September 2 Confirmation Opinion and made on the record at the hearing on January 4, 2016, constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Federal Rule of Bankruptcy Procedure 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusion of law constitute findings of fact, they are adopted as such.

B.   <u>Jurisdiction, Venue, Core Proceeding - 28 U.S.C. §§ 157(b)(2) and 1334(a)</u>.  The Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C §1334. Confirmation of the Plan is a core proceeding under 28 U.S.C. 157(b)(2), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Debtor is a proper plan proponent under Section 1112(a) of the Bankruptcy Code.

C.   <u>Chapter 11 Petition</u>.   On October 7, 2014 (the "Petition Date"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is authorized to continue to operate is business and manage its properties as a debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to Section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to Section 1102 of the Bankruptcy Code.

D.   <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made,

proffered, or addressed at the hearings held before the Court during the pendency of the Chapter 11 Case.

E. <u>Burden of Proof</u>. The Debtor, as the Plan proponent, has the burden of proving the elements of Bankruptcy Code sections 1129(a) by a preponderance of the evidence. The Debtor has met such burden.

F. <u>Transmittal and Mailing of Materials: Notice</u>. Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearings, along with all deadlines for voting on or filing objections to the Plan, has been given to all known holders of Claims in accordance with the Bankruptcy Rules and the procedures set forth in the Disclosure Statement Order and further orders of the Court.

G. <u>Identification of Plan Proponents—Fed. R. Bankr. P. 3016(a)</u>. The Plan satisfies Bankruptcy Rule 3016(a) by identifying the date of the Plan and the proponent of the Plan.

H. <u>Solicitation and Transmittal of Solicitation Package</u>. The solicitation of votes to accept or reject the Plan and requests for consent to the treatment were solicited in good faith and in compliance with Bankruptcy Code section 1125 and 1126, and Bankruptcy Rules 3017 and 3018, the Disclosure Statement, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations. The Solicitation Package was transmitted to all creditors entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan, and the solicitation materials used and solicitation procedures followed comply with Bankruptcy Code section 1126, thereby satisfying the requirements of Fed. R. Bankr. P. 3018. All procedures used to distribute the Solicitation Packages to the applicable holders of Claims were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and any other applicable rules, laws, and regulations.

I.       Good Faith Solicitation—11 U.S.C. § 1125(e).  Based on the record before the Court in this Chapter 11 Case, the Debtor and its directors, officers, employees, agents, advisors, accountants, consultants, attorneys, and other representatives have acted in good faith within the meaning of Bankruptcy Code section 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to and consents to the treatment afforded under the Plan and their participation in the activities described in Bankruptcy Code section 1125.

J.       Notice of the Confirmation Hearings—Fed. R. Bankr. P. 2002 and 3017.  The Debtor gave notice of the Confirmation Hearings, the deadline to accept or reject the Plan, the deadline to object to the Plan in accordance with the Disclosure Statement Order.  The solicitation package prescribed by the Disclosure Statement Order was transmitted to the creditors entitled to vote on the Plan in accordance with Fed. R. Bankr. P. 2002 and 3017.

K.       Notice of the January 4, 2016 Hearing.  The Debtor gave proper notice of the hearing held on January 4, 2016.

L.       Impaired Classes That Have Voted to Accept the Plan.  As evidenced by the record established at the Confirmation Hearings, at least one of more impaired Classes have voted to accept the Plan, as defined by sections 1124 and 1126 of the Bankruptcy Code.

M.       Modifications To The Plan.  The modifications to the Second Amended Plan and incorporated into the Plan set forth in the Prior Modifications, as set forth on the record at the Confirmation Hearings, and as incorporated into the Plan, do not materially and adversely affect or change the treatment of any creditor who has not accepted such modifications.  Accordingly, under Fed. R. Bankr. P. 3019, these modifications neither require additional disclosure under Bankruptcy Code section 1125 nor re-solicitation of acceptances or rejections under Bankruptcy

Code section 1126, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Disclosure of the modifications on the record at the Confirmation Hearings constitutes due and sufficient notice thereof under the circumstances of this Chapter 11 Case. Accordingly, pursuant to Bankruptcy Code section 1127 and Bankruptcy Rule 3019, all holders of Claims that have accepted or are conclusively deemed to have accepted the Plan are deemed to have accepted such modifications to the Plan.

N.      <u>Bankruptcy Rule 3016(a)</u>.      The Plan reflects the date it was proposed and identifies the entity submitting it as Plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

O.      <u>Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1)</u>.      The Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, thereby satisfying 11 U.S.C. § 1129(a)(1).

      a.      <u>Proper Classification 11 U.S.C. §§ 1122 and 1123(a)(1)</u>.      In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates sixteen (16) Classes of Impaired Claims. The Claims placed in each Class are substantially similar to other Claims in each such Class, and such classification is therefore consistent with Bankruptcy Code section 1122. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes and the Plan's treatment thereof do not unfairly discriminate between Holders of Claims. The Plan satisfies Bankruptcy Code sections 1122 and 1123(a)(1).

      b.      <u>Specified Treatment of Impaired and Unimpaired Classes— 11 U.S.C. §§ 1123(a)(2) and (3)</u>.      Article V of the Plan specifies the treatment of the Impaired Classes of Claims thereby satisfying Bankruptcy Code section 1123(a)(3).

      c.      <u>No Discrimination—11 U.S.C. § 1123(a)(4)</u>.      The Plan either provides the same treatment for each Claim within each respective Class or the Holder of a particular Claim or interest has agreed to a less favorable treatment of his/her/its particular Claim or interest, thereby satisfying Bankruptcy Code section 1123(a)(4).

d. Implementation of the Plan—11 U.S.C. § 1123(a)(5). Article VI of the Plan provides adequate and proper means for implementing the Plan. Other articles of the Plan provide means for implementation of the Plan as well. For example, Articles VII provides for the treatment of executory contracts and unexpired leases; Article VIII describes the process for resolving and treating disputed claims; and Article XI provides for the continuing jurisdiction over matters arising out of or related to this Chapter 11 Case and the Plan.

e. Selection of Officers and Directors—11 U.S.C. § 1123(a)(7). The Debtor properly and adequately discloses the Reorganized Debtor's post-confirmation management in Sections 6.4 of the Plan by stating that Reorganized Debtor shall continue to be owned by the Holders of Equity Interests and will continue to be managed by John Blomfield. Consequently, Bankruptcy Code section 1123(a)(7) is met.

f. Permissible Plan Provisions—11 U.S.C. § 1123(b). The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

g. Impairment of Classes—11 U.S.C. § 1123(b)(1). In accordance with Bankruptcy Code Section 1123(b)(1), Article V of the Plan impairs or leaves unimpaired, as the case may be, each class of Claims under the Plan.

h. Treatment of Executory Contracts and Unexpired Leases—11 U.S.C. § 1123(b)(2). The Plan constitutes a motion by the Debtor to assume all executory contracts and unexpired leases not expressly assumed or rejected within thirty (30) days of the Confirmation Date as allowed by Bankruptcy Code section 1123(b)(2).

i. Settlement of Claims—11 U.S.C. § 1123(b)(3). Article V of the Plan provides for various treatment of classes of claims, including the settlement of, or adjustments to, certain claims or interests belonging to the Debtor or to the estate as allowed by Bankruptcy Code section 1123(b)(3).

j. Modify the Rights of Secured Creditors—11 U.S.C. § 1123(b)(5). Article V of the Plan modifies the rights of several Secured Creditors who are Holders of Secured Claims and thus conforms to Bankruptcy Code section 1123(b)(5).

k. Additional Plan Provisions—11 U.S.C. § 1123(b)(6). The Plan also provides a number of provisions related to the means for

implementing the Plan, including the continued operation of the Debtor. Further, the Plan provides a number of provisions related to the settlement, timing and payment of claims, as well as continuing jurisdiction and certain injunctions and exculpations. All other plan provisions are acceptable and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan complies with Bankruptcy Code section 1123(b)(6).

P. <u>The Debtor's Compliance with the Bankruptcy Code—11 U.S.C. § 1129(a)(2)</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code section 1129(a)(2). Based upon the record made at the Confirmation Hearings, *inter alia*: (a) the Debtor is eligible for relief under title 11 in accordance with Bankruptcy Code section 109, (b) the Debtor has complied with applicable provisions of the Bankruptcy Code and orders of the Court and (c) the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in transmitting the Solicitation Package and related documents and notices and in soliciting and tabulating votes on the Plan.

Q. <u>Plan Proposed in Good Faith—11 U.S.C. § 1129(a)(3)</u>. The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Bankruptcy Code section 1129(a)(3). This Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based upon the evidence presented at the Confirmation Hearings, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of effectively reorganizing the Debtor and maximizing the recovery to creditors in accordance with the priorities set forth in the Bankruptcy Code.

R. <u>Payment for Services or Costs and Expenses—11 U.S.C. § 1129(a)(4)</u>. Any payments made or to be made by the Debtor for services or for costs and expenses in connection

with this case have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying Bankruptcy Code section 1129(a)(4).

S.    Identification of Directors, Officers, and Insiders —11 U.S.C. § 1129(a)(5).  The Debtor has complied with Bankruptcy Code section 1129(a)(5) by disclosing at or before the Confirmation Hearings as required by the Plan the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of any of the Debtor.

T.    No Rate Changes—11 U.S.C. § 1129(a)(6).    No governmental regulatory commission has jurisdiction over rates of the Debtor after confirmation of the Plan.    Thus, Bankruptcy Code section 1129(a)(6) is not applicable in this Chapter 11 Case.

U.    Best Interests of Creditors Test—11 U.S.C. § 1129(a)(7).    The Plan satisfies Bankruptcy Code section 1129(a)(7).  The Disclosure Statement, Plan, and evidence adduced at the Confirmation Hearings (i) are persuasive, credible and accurate as of the dates such evidence was prepared, presented, or proffered; (ii) have not been controverted by other persuasive evidence or have not been challenged; (iii) are based upon reasonable and sound assumptions; (iv) provide a reasonable estimate of the liquidation value of the Debtor's assets upon conversion to a chapter 7 proceeding; and (v) establish that each holder of a Claim in an impaired Class will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the applicable Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

V.    Treatment of Administrative, Other Priority Claims and Priority Tax Claims—11 U.S.C. § 1129(a)(9).  The treatment of Administrative Claims and Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code sections 1129(a)(9)(A) and (C).

W.    Acceptance by Impaired Classes—11 U.S.C. § 1129(a)(10).  At least one Class of Claims that is impaired under the Plan has accepted the Plan thereby satisfying Bankruptcy Code section 1129(a)(10).

X.    Feasibility—11 U.S.C. § 1129(a)(11).  The Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.  Specifically, the Plan is not likely to be followed by liquidation or need for further reorganization. The Court analyzed the factors traditionally used by bankruptcy courts in this Circuit—(i) the debtor's capital structure, (ii) the earning power of the business, (iii) economic conditions, (iv) the ability of debtor's management, (v) the probability of continuation of management, and (vi) any other related matters—and found that the factors support a finding that the Debtor's plan is feasible.

Y.    Payment of Fees—11 U.S.C. § 1129(a)(12).  All fees payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to the Plan, thus satisfying the requirements of Bankruptcy Code section 1129(a)(12).

Z.    Continuation of Retiree Benefits—11 U.S.C. § 1129(a)(13).  The Debtor does not have any retiree benefits to be continued under the Plan.  Thus, Bankruptcy Code section 1129(a)(13) is not applicable to the Debtor.

AA.   Inapplicability of 11 U.S.C. §§ 1129(a)(14) & (15).  The Debtor does not have any domestic support obligations and is not an individual, thus section 1129(a)(14) and (15) are not applicable.

BB.   Transfers of Property—11 U.S.C. § 1129(a)(16).  The Plan does not provide for the sale of any of the Debtor's property. Thus, Bankruptcy Code Section 1129(a)(16) is inapplicable.

CC.    <u>11 U.S.C. § 1129(b)</u>.   All of the requirements of  Bankruptcy Code section 1129(b) have been met as the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon: (a) the Debtor, (b) any entity issuing securities under the plan, (c) any Creditor, (d) any equity security holder, and (e) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, whether or not the claim or interest of such Creditor, equity interest holder is Impaired under the plan and whether or not such Creditor or equity security holder accepted the Plan.

DD.    <u>Resolved Objections</u>.  The following objections were resolved or withdrawn:

- Objection to Confirmation of Amended Chapter 11 Plan (the "Ford Objection") [Docket No. 283] was resolved pursuant to the Plan Modifications;

- Value Place Franchise Services LLC's Objection to Confirmation of the Debtor's Second Amended Plan (the "Value Place Objection")[Docket No. 290] was withdrawn pursuant to a stipulation between the parties entered prior to the July Confirmation Hearing;

- Taxing Authorities' Objection to Confirmation of Debtor's Second Amended Plan of Reorganization (the "Taxing Authority Objection")[Docket No. 291] was resolved pursuant to the Plan Modifications;

- Oracle's Partial Objection and Reservation of Rights Regarding Debtor's Second Amended Plan of Reorganization (the "Oracle Objection")[Docket No. 292] was resolved pursuant to the Plan Modifications;

- Mansa Capital, LLC's Objection to Confirmation of the Debtor's Plan of Reorganization [Docket No. 294], along with supplemental and subsequent objections to confirmation were resolved by agreement by the language included in the Fifth Amended Plan.

EE.    <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

DECREES

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

1.    <u>Confirmation of the Plan</u>.  The Plan, which includes any and all modifications, including any modifications set forth on the record at the Final Confirmation Hearing, is **APPROVED** and **CONFIRMED** under Bankruptcy Code section 1129 in its entirety.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  For reference, the Plan, with the modifications incorporated, is attached as **Exhibit A** to this Order.

2.    <u>Objections</u>.  Any objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.

3.    <u>Approval of Plan Modifications</u>.    The modifications, including the Prior Modifications and those set forth on the record at the Final Confirmation Hearing and contained and incorporated into the Plan, are approved.  The Plan, as so modified, shall constitute the Plan and all references herein to the Plan shall mean the Plan as so modified.

4.    <u>Effects of Confirmation; Effectiveness; Successors and Assigns</u>.    The Court directs that Fed. R. Civ. P. 62(a) and the stay provided by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order, and the Court authorizes the Debtor to consummate the Plan after entry of this Confirmation Order.  Subject to the occurrence of the Effective Date, and notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan (including the Plan Exhibits and all documents and agreements

executed pursuant to the Plan) and this Confirmation Order shall be binding on (a) the Debtor, (b) any entity issuing securities under the plan, (c) any Creditor, (d) any equity security holder, and (e) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, whether or not the claim or interest of such Creditor, equity interest holder is Impaired under the plan and whether or not such Creditor or equity security holder accepted the Plan. Upon the occurrence of the Effective Date with respect to the Debtor, the Plan shall be deemed substantially consummated.

5. <u>Releases and Exculpations</u>. The release and exculpation provisions set forth in Article XII of the Plan are incorporated into this Confirmation Order as if set forth in full herein and are hereby approved in their entirety, and are subject to any other terms of the Plan.

6. <u>Injunction Against Interference with the Plan</u>. Pursuant to Article 12.9 of the Plan, upon the entry of the Confirmation Order, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to section 105 of the Bankruptcy Code from taking any action to collect or enforce any Claim directly or indirectly against the Reorganized Debtor in any manner inconsistent with the terms contained in the Plan, unless expressly provided otherwise in the Plan.

7. <u>Temporary Injunctive Relief</u>. Section 12.9 of the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code. Section 12.9 provides specifically,

> Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to Section 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtor in any manner inconsistent

with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

8.    <u>Plan Implementation Authorization</u>.    Pursuant to the Plan, all necessary documents for the implementation of the Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided by the Plan.

9.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases—11 U.S.C. § 1123(b)(2)</u>.  Pursuant to Article VII of the Plan, all executory contracts and unexpired leases to which the Debtor is a party shall be assumed as of the Confirmation Date, unless the Debtor expressly rejects such contract or lease on or before the thirtieth (30th) day after the Confirmation Date, or such executory contract or unexpired lease was previously rejected, or is subject to a pending motion to assume or reject as of the Confirmation Date.

10.    <u>Rejection Damage Claims</u>.  Pursuant to Section 7.3 of the Plan, any Claims based upon rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtor, unless a proof of claim is filed with the Bankruptcy Court and served on the Reorganized Debtor such that it actually receives the proof of claim within thirty (30) calendar days of entry of an order rejecting such contract or lease.

11.    <u>Reservation of Rights Regarding Executory Contracts and Unexpired Leases</u>: Pursuant to 7.10 of the Plan, the Debtor has the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to thirty (30) days after the Confirmation Date.

12.    <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any State or any other governmental authority with respect to implementation or consummation of the Plan and

any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments, or agreements, and any amendments or modifications thereto.

13. <u>Exemption from Certain Taxes</u>. Pursuant to section 1146(c) of the Bankruptcy Code, any transfers contemplated by the Plan shall not be subject to any stamp, transfer tax, or similar tax.

14. <u>Resolution of Claims</u>. Except as otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Plan. All objections to Claims shall be filed with the Court within ninety (90) days from the Effective Date, and a copy of the objection shall be served upon the Holder of the Claim to which the such objection pertains. Any request for an extension period to object to Claims need be served only upon the creditors involved and the United States Trustee.

15. <u>Payment of Fees</u>. All fees payable by the Debtor under 28 U.S.C. § 1930 shall be paid on the later of the Effective Date or the due date. After the Effective Date, neither the Debtor nor its Estate, nor the Reorganized Debtor shall thereafter be liable for the payment of any additional fees.

16. <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or

vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

17.    <u>Retention of Jurisdiction</u>.  Except as otherwise specified in the Plan, pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in Article XI of the Plan.

18.    <u>Notice of Entry of Confirmation Order</u>.  The Debtor shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(j), 2002(k), and 3020(c) on all creditors, the United States Trustee, the Securities and Exchange Commission, the Internal Revenue Service, and other parties in interest, by causing notice of entry of this Confirmation Order to be delivered to such parties by first-class mail, postage prepaid.

19.    <u>Notice of Effective Date</u>.  Within five (5) Business Days following the occurrence of the Effective Date, the Reorganized Debtor shall file notice of the occurrence of the Effective Date with the Bankruptcy Court and shall serve a copy of same on (a) the United States Trustee; and (b) the entities that have requested notice in this case pursuant to Bankruptcy Rule 2002.

20.    <u>Reference to Plan Provisions</u>.  The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

21.    <u>Inconsistency</u>.  In the event of an inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern unless otherwise expressly provided for in such agreements, instruments, or documents.  In the event of any inconsistency between the Plan and any

agreement, instrument, or document intended to implement the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern.

22. <u>Enforceability</u>. Pursuant to Bankruptcy Code sections 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan and all plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

23. <u>Final Order</u>. This Confirmation Order constitutes a Final Order and no just cause exists for delay of this Confirmation Order.

24. <u>Administrative and Professional Fee Claims</u>. Except for Professional Claims, the deadline for filing all applications for payment of Administrative Claims shall be on or before thirty (30) days after the entry of this Confirmation Order. Except as expressly provided elsewhere in the Plan, any Administrative Claim filed after that date shall be deemed untimely filed and shall be disallowed. The deadline for objecting to such Administrative Claims is twenty-one (21) days after a request for payment of such Claim has been filed and served upon counsel for the Debtor. The deadline for submitting applications for compensation for services rendered in this case pursuant to sections 327, 328, 330, 331, or 1103 (the "Professional Fee Claims") of the Bankruptcy Code prior to the Effective Date is sixty (60) days after the Effective Date. The deadline to object to final fee applications shall be the twenty-first (21st) day after such fee application has been filed.

# # # END OF ORDER # # #

PREPARED AND SUBMITTED BY:

<u>/s/ Jason P. Kathman</u>

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER 11 U.S.C. § 1129 CONFIRMING DEBTOR'S FIFTH AMENDED PLAN OF REORGANIZATION - Page 18**

Gerrit M. Pronske
Texas Bar No. 16351640
Jason P. Kathman
Texas Bar No. 24070036
PRONSKE GOOLSBY & KATHMAN,, P.C.
901 Main Street, Suite 610
Dallas, Texas 75202
Telephone: (214) 658-6500
Facsimile: (214) 658-6509

**ATTORNEYS FOR DEBTOR and
DEBTOR-IN-POSSESSION**

EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 14-34874-BJH-11** |
| **COUTURE HOTEL CORPORATION** | § | |
| **a/k/a HUGH BLACK-ST MARY** | § | |
| **ENTERPRISES, INC.** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

---

## DEBTOR'S FIFTH AMENDED PLAN OF REORGANIZATION

---

Gerrit M. Pronske
State Bar No. 16351640
Jason P. Kathman
State Bar No. 24070036
**PRONSKE GOOLSBY & KATHMAN, P.C.**
901 Main Street, Suite 610
Dallas, Texas 75202
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier

**COUNSEL FOR DEBTOR**
**AND DEBTOR IN POSSESSION**

**DATED: JANUARY 5, 2016**

## TABLE OF CONTENTS

I.    **SUMMARY OF THE PLAN** .................................................................1
    1.1 Overview of the Plan ...........................................................1
    1.2 Payments to Creditors .........................................................1

II.   **DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME** .........................................................................1
    2.1   Scope of Definitions .....................................................1
    2.2   Definitions...................................................................1
    2.3   Rules of Interpretation ..............................................13
    2.4   Computation of Time .................................................13
    2.5   Exhibits and Plan Supplement ..................................13

III.  **DESIGNATION OF CLASSES OF CLAIMS** ...................13
    3.1   Designation of Classes of Claims ...........................13
    3.2   Unclassified Claims ...................................................14
    3.3   Classified Claims and Interests................................14

IV.  **PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND CERTAIN PRIORITY CLAIMS** ...........................14
    4.1   Administrative Claim Applications and Deadline ....................14
    4.2   Treatment of Administrative Claims .......................15
    4.3   Treatment of Professional Claims............................15
    4.4   Priority Tax Claims....................................................15

V.   **TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**....................16
    5.1   Secured Claim of Propel Financial related to Corpus Propel Note ...........16
    5.2   Secured Claim of Propel Financial related to Dallas Propel Note.............16
    5.3   Secured Claim of Propel Financial related to Corpus 2014 Ad Valorem Taxes ...........17
    5.4   Secured Claims of Propel Financial related to Dallas 2014 Ad Valorem Taxes ...........17
    5.5   Intentionally omitted...................................................17
    5.6   Intentionally omitted...................................................17
    5.7   Secured Claims of Ford Motor Credit .....................17
    5.8   Secured Claims of Ability Insurance Company........................19
    5.9   Secured Claims of Mansa Capital, LLC .................22
    5.10  Secured Claim of Shaun Collins ...........................28
    5.11  Secured Claim of Sherwin Williams Company ......................28
    5.12  Unsecured Claims of HJI ........................................28
    5.13  Unsecured Claim of WHR Related to WHR Cure Claim.........................29
    5.14  Unsecured Claims of WHR Related to Notes.............................29

5.15    Intentionally Omitted ..................................................................29

5.16    Administrative Convenience Claim ............................................29

5.17    General Unsecured Claims ..........................................................30

5.18    Subordinated Claims of Insiders ................................................30

5.19    Equity Interest Holders ...............................................................30

5.20    Payments to the United States Trustee........................................30

**VI.    MEANS OF IMPLEMENTING THE PLAN** ........................................30

6.1     Continued Operations of Couture Hotel Corporation .................30

6.2     Guarantor Joint Proponent Property. ..........................................31

6.3     Class 9 Reserve Account .............................................................31

6.4     Post-Effective Date Management ................................................31

6.5     Management Fee ..........................................................................31

6.6     Distributions to Equity Interest Holders. ...................................31

6.7     Corporate Action.........................................................................32

6.8     Documents ...................................................................................32

6.9     Re-Vesting of Assets...................................................................32

6.10    Incorporation of Bankruptcy Rule 9019 .....................................32

6.11    Incorporation of Valuation Motion ............................................32

6.12    Automatic Stay............................................................................33

6.13    Conditions Precedent to Effective Date .....................................33

6.14    Waiver of Conditions Precedent ................................................33

6.15    Effect of Failure of Conditions ..................................................33

6.16    Reservation of Rights..................................................................33

6.17    Substantial Consummation .........................................................33

6.18    Rights Under 1129(b ...................................................................34

6.19    Retention of Causes of Action. ...................................................34

**VII.   PROVISIONS FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**..........................................................35

7.1     General Assumption of Executory Contracts .............................35

7.2     Cure of Defaults..........................................................................35

7.3     Claims for Damages....................................................................36

7.4     Assumption of HJI Corpus Franchise Agreement ......................36

7.5     Rejection of HJI Las Vegas Franchise Agreement ....................36

7.6     Assumption of Dallas Franchise Agreement ..............................36

7.7     Assumption of Wells Fargo Bus Leases .....................................37

7.8     Assumption of US Bank Equipment Lease .................................37

7.9     Assumption of Element Equipment Lease..................................38

7.10    Reservation of Rights..................................................................38

        7.11    Assumption of Oracle Agreement. ..............................................38
VIII.   **RESOLUTION OF UNDETERMINED CLAIMS** ...........................................38
        8.1     Standing ..............................................................................38
        8.2     Effect of Bar Date ..............................................................38
        8.3     Amendments to Claims; Claims Filed After the Confirmation Date.........39
        8.4     Objection Deadline ..............................................................39
        8.5     Creditor Response to Objection ..............................................39
        8.6     No Payment Pending Allowance ..............................................39
        8.7     Allowance of Claims..............................................................39
        8.8     Estimation of Claims ..............................................................40
IX.     **DISTRIBUTION PROCEDURES** ....................................................40
        9.1     Date of Distributions..............................................................40
        9.2     Withholding and Reporting Requirements ..............................40
        9.3     Unclaimed Distributions ......................................................40
X.      **MODIFICATION OF THE PLAN** ....................................................41
        10.1    Amendments Prior to Confirmation Date..............................41
        10.2    Amendments After Confirmation Date..................................41
        10.3    Effect on Claims ..............................................................41
XI      **RETENTION OF JURISDICTION** ....................................................41
        11.1    Purposes ..............................................................................41
        11.2    Exclusive Jurisdiction ............................................................43
        11.3    Abstention ..............................................................................43
XII.    **GENERAL PROVISIONS** ............................................................43
        12.1    Certain Rights Unaffected....................................................43
        12.2    Headings ..............................................................................43
        12.3    Severability ..............................................................................43
        12.4    Governing Law ......................................................................43
        12.5    Successors and Assigns..........................................................43
        12.6    Discharge of Claims..............................................................43
        12.7    Discharge of Debtor ..............................................................44
        12.8    Exculpations ..........................................................................44
        12.9    Injunctive Relief....................................................................44

## DEBTOR'S FIFTH AMENDED PLAN OF REORGANIZATION
## DATED JANUARY 5, 2016

Couture Hotel Corporation a/k/a Hugh Black-St Mary Enterprises, Inc. (the "Debtor") proposes the following Plan of Reorganization (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

1.1     Overview of the Plan.  The Plan provides for a reorganization of all liabilities owed by the Debtor, as described herein.  The Reorganized Debtor, as provided herein, shall be the surviving entity to the Debtor.

1.2     Payments to Creditors.  The Plan provides for Creditors to be paid as provided in Article V herein from a combination of cash at Confirmation and the revenues associated with the continued operations of the Reorganized Debtor's business. All Creditors of the Debtor will be paid as provided herein in accordance with the priority scheme established by the Bankruptcy Code. **PLEASE CONSULT ARTICLE V FOR SEPARATE INFORMATION REGARDING THE REPAYMENT OF YOUR CLAIM.**

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

2.1     Scope of Definitions.  As used in this Plan, the following terms shall have their respective meanings as set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined.  Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.2     Definitions.

    2.2.1   1933 Act:     The Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

    2.2.2   Ability:     Ability Insurance Company.

    2.2.3   Ability Claim:  The Allowed Secured Claim of Ability related to the Ability Note and treated in Section 5.8 of the Plan.

    2.2.4   Ability Note:  That certain promissory note dated June 11, 2013 by and between Hugh-Black-St. Mary Enterprises, Inc., as maker, and Southwest Guaranty Mortgage Corp., as Lender, in the original amount of $3,200,000.00, and as later transferred to Ability Insurance Company, Inc. by way of that certain allonge dated June 11, 2013.

2.2.5 <u>Ability Deed of Trust</u>: That certain Deed of Trust and Security Agreement dated June 11, 2013 by and between Hugh-Black-St. Mary Enterprises, Inc., as grantor, and Russell T. Gaines, as trustee, for the benefit of Southwest Guaranty Mortgage Corp., as grantee and beneficiary.

2.2.6 <u>Administrative Claim</u>: Any Claim for payment of any cost or expense of administration of the Chapter 11 Case entitled to priority in accordance with Sections 503(b) and/or 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's Estate and operating its business from and after the Petition Date to and including the Confirmation Date and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtor's Estate under Chapter 11 of the Bankruptcy Code.

2.2.7 <u>Administrative Claim Bar Date</u>: The date that is thirty (30) days after the Confirmation Date.

2.2.8 <u>AFB Compromise Motion</u>: Debtor's Motion to (i) Approve Settlement and Compromise of Claim Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (ii) Entry of a Consent Order Pursuant to Federal Rule of Bankruptcy Procedure 4001(d) [Docket No. 126] filed in the Chapter 11 Case.

2.2.9 <u>AFB Settlement Order</u>: The Order Approving Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Agreement Related to Stay with Respect to Las Vegas Hotels Pursuant to Federal Rule of Bankruptcy Procedure 4001(d) [Docket No. 163] entered on February 9, 2015 in the Bankruptcy Case.

2.2.10 <u>Allowed Claim or Allowed Interest</u>: Any Claim (a) based on an application of a Professional Person to the extent such application is approved by Final Order; (b) allowed under this Plan; or (c) proof of claim which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by the Debtor in its schedules filed under Section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent, *provided that* a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

2.2.11  <u>Allowed Priority Claim</u>:  All or that portion of any Priority Claim which is, or has become, an Allowed Claim.

2.2.12  <u>Allowed Secured Claim</u>:  All of that portion of any Secured Claim which is, or has become, an Allowed Claim.

2.2.13  <u>Armed Forces Bank</u>:  Armed Forces Bank, N.A.

2.2.14  <u>Avoidance Action</u>:  Any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, or any preference, fraudulent transfer action or other avoidable transfer that can be recovered under Chapter 5 of the Bankruptcy Code except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

2.2.15  <u>Bankruptcy Code</u>:  The Bankruptcy Reform Act of 1978 as amended, and as applicable to this Chapter 11 case, § 101 *et seq.* Title 11, United States Code.

2.2.16  <u>Bankruptcy Rules</u>:  The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

2.2.17  <u>Bar Date</u>:  February 4, 2015, the date set forth in the Debtor's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadline and the date by which all proofs of claim for all creditors (except for governmental units) must be filed, or be barred pursuant to Federal Rule of Bankruptcy Procedure 3003.

2.2.18  <u>Bid Procedures Motion</u>.  Debtor's Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code for (i) Approval of Bid Procedures for the Sale of Debtor's Hotels Located in Las Vegas, Nevada, (ii) Authorizing Use of Asset Purchase Agreement as a Stalking Horse Agreement with Armed Forces Bank, N.A. in Connection Therewith, and (iii) the Setting of Related Auction and Hearing Dates [Docket No. 90] filed in the Chapter 11 Case.

2.2.19  <u>Business Day</u>:  Any day on which banks are open to carry on their ordinary commercial banking business in Dallas, Texas.

2.2.20  <u>Cash</u>:  Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but

specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.2.21 Cash Collateral Order: The Amended Final Order on Amended Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) Granting Adequate Protection to Secured Lenders [Docket No. 104] entered in the Chapter 11 Case.

2.2.22 Causes of Action: All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of the Debtor, for affirmative recovery of Cash or other property of the Estate, existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date, whether listed in the Debtor's Schedules (as amended, supplemented and/or modified from time to time), the Disclosure Statement, the Plan, the Confirmation Order, any pleading in this Chapter 11 Case, or any other disclosure, statement, correspondence or communication providing informal notice of such Cause of Action.

2.2.23 Chapter 11 Case: The Chapter 11 bankruptcy case of Couture Hotel Corporation, Case Number 14-34874-BJH-11, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, filed October 7, 2014.

2.2.24 Claim: Any right against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.2.25 Claims Objection Deadline: The date by which parties authorized by the Plan may file objections to Claims, which date shall be ninety (90) days after the Effective Date, except with respect to Administrative Claims, which deadlines are further specified in the Plan.

2.2.26 Claims Register: The register of proofs of claim filed in the Chapter 11 Case, maintained by the Clerk of the United States Bankruptcy Court for the Northern District of Texas.

2.2.27 Clark County Claim: The Allowed Secured Claim of the Clark County Treasurer for property taxes related to the Las Vegas Hotels and treated in Section 5.3 of the Plan.

2.2.28 <u>Class</u>: One of the categories of Claims established under Article III of this Plan.

2.2.29 <u>Class 3(a) Vehicle</u>: That specific 2010 Ford E350 van owned by the Debtor, with a vehicle identification number ("VIN") of 1FBSS3BL4ADA32184, and treated in Section 5.7.1 of the Plan.

2.2.30 <u>Class 3(b) Vehicle</u>: That specific 2010 Ford E350 van owned by the Debtor, with a vehicle identification number ("VIN") of 1FBSS3BL7ADA62151, and treated in Section 5.7.2 of the Plan.

2.2.31 <u>Class 3(c) Vehicle</u>: That specific 2013 Ford E350 van owned by the Debtor, with a vehicle identification number ("VIN") of 1FBSS3BL9DDA94250, and treated in Section 5.7.3 of the Plan.

2.2.32 <u>Class 3 Vehicles</u>. Collectively the Class 3(a) Vehicle, Class 3(b) Vehicle and Class 3(c) Vehicle.

2.2.33 <u>Class 9 Reserve Account</u>: The reserve account described and established pursuant to Section 6.3 of the Plan for the payment of Class 9 claims.

2.2.34 <u>Collateral</u>: Property in which the Debtor has an interest, whether legal or equitable, that secures, in whole or in part, payment of an Allowed Secured Claim.

2.2.35 <u>Confirmation</u>: Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.2.36 <u>Confirmation Date</u>: The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

2.2.37 <u>Confirmation Hearing</u>: The hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be continued, rescheduled or delayed.

2.2.38 <u>Confirmation Order</u>: Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.2.39 <u>Contingent Claim</u>: Any Claim listed in the Debtor's schedules that is listed as "contingent."

2.2.40 <u>Corpus Hotel</u>: The limited-service hotel owned by the Debtor located at 6301 IH 37, Corpus Christi, Texas 78409, currently operated as a Howard Johnson.

2.2.41 <u>Court</u>: The United States Bankruptcy Court for the Northern District of Texas or such other Court as may have jurisdiction of the Chapter 11 Case.

2.2.42 <u>Creditor</u>: Any entity that is the Holder of a Claim or an interest, including, but not limited to: (a) a Claim that arose on or before the Petition Date, (b) an interest that arose on or before the Petition Date, (c) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h), or Section 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

2.2.43 <u>Cure Claim</u>: A "Cure Claim" refers to the payment or other performance required to cure any exiting default under an executory contract in accordance with Section 365 of the Bankruptcy Code, and unless otherwise specifically provided for in the Plan, is presented via an "Assumption Cure Proof of Claim" as described in Section 7.2 of the Plan.

2.2.44 <u>Dallas County Claim</u>: The Allowed Secured Claim of Dallas County for property taxes related to the Dallas Hotels and treated in Section 5.1 of the Plan.

2.2.45 <u>Dallas Franchise Agreement</u>: The Wyndham Hotel Franchise Agreement dated June 30, 2014, by and between Wyndham Hotels and Resorts, LLC, a franchisor, and Couture Hotel Corporation, as franchisee.

2.2.46 <u>Dallas Hotel</u>: The full-service hotel owned by the Debtor located at 2645 Lyndon B. Johnson Frwy., Dallas, Texas 75234, currently operated as a Wyndham Garden.

2.2.47 <u>Debtor</u>: Couture Hotel Corporation a/k/a Hugh Black—St. Mary Enterprises, Inc.

2.2.48 <u>Disclosure Statement</u>: The written Disclosure Statement filed and served with respect to this Plan, as approved by the Court pursuant to Section 1125 of the Bankruptcy Code.

2.2.49 <u>Disputed Claim</u>: Any Claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.2.50 <u>Effective Date</u>: The first Business Day on which all of the conditions precedent to the Effective Date specified in Section 6.15 hereof shall have been satisfied or waived as provided in Section 6.17 hereof, *provided,*

*however,* that if such conditions precedent have been so satisfied or waived, but a stay, injunction or similar prohibition of the Confirmation Order is in effect, then the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect as long as the conditions precedent continue to be satisfied or waived.

2.2.51   <u>Element Financial</u>:   Element Financial Corp. f/k/a CoActiv Capital Partners, Inc.

2.2.52   <u>Element Equipment Lease</u>:   That certain Equipment Lease Agreement by and between the Debtor and CoActiv Capital Partners Inc., Lease # 84022, signed May 10, 2012, related to the rental of a Micros property management system.

2.2.53   <u>Estate</u>:   The estate created in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

2.2.54   <u>Equity Interest</u>:   An interest in the ownership of the Debtor.

2.2.55   <u>Fee Application</u>:   An application of a Professional Person under Sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

2.2.56   <u>File, Filed, or Filing</u>:   Means file, filed or filing with the clerk of the Bankruptcy Court, or its authorized designee in the Chapter 11 Case.

2.2.57   <u>Final Order</u>:   An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, re-argument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, re-argument, rehearing or certiorari has been denied and a time to seek a further appeal, review, re-argument, rehearing or certiorari has expired as a result of which such order shall have become final and non-appealable in accordance with applicable law.

2.2.58   <u>Ford</u>:   Ford Motor Credit Company LLC.

2.2.59   <u>Ford Adequate Protection Order</u>:   The Agreed Order Regarding Adequate Protection [Docket No. 191] entered in the Chapter 11 Case and related to adequate protection payments to be made to Ford.

2.2.60   <u>Franchisors</u>:   Collectively HJI and WHR.

2.2.60A   <u>Franchisor Stipulation</u>:   That certain Stipulation Regarding Treatment of Claims held by Howard Johnson International, Inc. and Wyndham Hotels and Resorts, LLC Pursuant to 11 U.S.C. § 365

**FIFTH AMENDED AMENDED PLAN OF REORGANIZATION OF COUTURE HOTEL CORPORATION – PAGE 7**

[Docket No. 298] agreed to between Franchisors and the Debtor and filed in the Chapter 11 Case on July 16, 2015.

2.2.61 <u>Gross Revenue</u>: The total amount of receipts for a particular period, as calculated and reconciled, on or before the twentieth day of the subsequent period.

2.2.62 <u>Guarantors</u>: Collectively John Blomfield and Shelby Weaver.

2.2.63 <u>Guarantor Joint Proponent Property</u>. That certain house and property located in Mexico, with the address Pelicanos 104 Marina Vallarta, Puerto Vallarta, Jalisco 48354.

2.2.64 <u>Guaranty Lawsuits</u>: Those two (2) lawsuits pending in the District Court of Harris County, Texas, styled *Mansa Capital, LLC v. Shelby T. Weaver*, Cause Number 2014-58594, and *Mansa Capital, LLC v. John F. Blomfield*, Cause Number 2014-58257, and consolidated pursuant to that certain *Order Granting Motion to Consolidate* signed on June 19, 2015 by the Honorable Robert K. Schaffer.

2.2.65 <u>Holder or Claimholder</u>: Any entity that is the holder of a Claim, including but not limited to (a) a Claim that arose on or before the Petition Date, (b) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h) or Section 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.2.66 <u>Final Cash Collateral Hearing</u>: The evidentiary hearing held in the Chapter 11 Case on November 7, 2014 related to the Debtor's use of cash collateral.

2.2.67 <u>HJI</u>: Howard Johnson International, Inc.

2.2.68 <u>HJI Corpus Franchise Agreement</u>: That certain Howard Johnson International, Inc. Franchise Agreement dated September 2, 2011 related to the Debtor's operation of the Corpus Hotel as a Howard Johnson.

2.2.69 <u>HJI Corpus Claim</u>: The Allowed Claim for HJI related to the Debtor's assumption of the HJI Corpus Franchise Agreement and treated in section 5.12.2 of the Plan.

2.2.70 <u>HJI Las Vegas Franchise Agreement</u>: That certain Howard Johnson International, Inc. Franchise Agreement dated September 2, 2011 related to the Debtor's former operation of the Las Vegas HJI Hotel.

2.2.71 Intentionally Omitted.

2.2.70A    <u>HJI Las Vegas Pre-Petition Claim</u>:    The Allowed Claims for HJI related to the prepetition amounts owed pursuant to the HJI Las Vegas Franchise Agreement treated in Section 5.12.1.

2.2.70B    <u>HJI Rejection Damages Claim</u>: The Allowed contingent Claim of HJI related to the rejection of the HJI Las Vegas Franchise Agreement created pursuant to Section 7.5.2 and treated in Section 5.12.2.

2.2.72    <u>Impaired</u>: When used with respect to any Claim, interest or Class, "impaired" has the same meaning as that contained in Section 1124 of the Bankruptcy Code.

2.2.72A    <u>Inter-Creditor Agreement</u>: That certain agreement by and among Ability, Mansa, and Couture dated on or as of the Effective Date related to the liens of Ability and Mansa in that certain property more specifically identified as the Corpus Hotel.

2.2.73    <u>Interest Holder</u>: Any person, or entity, holding an Equity Interest in the Debtor as of the Petition Date.

2.2.74    <u>Las Vegas HJI Hotel</u>: That certain hotel located at 5300 East Craig Road, Las Vegas, Nevada, formerly owned and operated by the Debtor as a Howard Johnson Hotel.

2.2.75    <u>Las Vegas Hotels</u>:    Collectively the Las Vegas HJI Hotel and the Las Vegas Independent Hotel.

2.2.76    <u>Las Vegas Independent Hotel</u>: That certain hotel located at 5300 East Craig Road, Las Vegas, Nevada, formerly owned and operated by the Debtor as a Value Place Extended Stay Hotel.

2.2.77    <u>Management Fee</u>: The fee described in Section 6.5 of the Plan to be paid for management of the Dallas Hotel and Corpus Hotel.

2.2.78    <u>Mansa</u>: Mansa Capital, LLC

2.2.79    <u>Mansa Note</u>: That certain secured promissory note dated July 3, 2013 by and between Couture Hotel Corporation, as maker, and Mansa Capital, LLC, as holder, in the original principal amount of $8,870,000.00.

2.2.80    <u>Nevada Receivership Action</u>: That certain civil action instituted by Armed Forces Bank, N.A. against the Debtor, in the Nevada State Court, seeking the appointment of a receiver pursuant to Nevada state law, Case No. A-14-706321-B.

2.2.81        <u>Nevada State Court</u>:   The District Court of Clark County, Nevada.

2.2.82        <u>Nueces County Claim</u>:  The Allowed Secured Claim of Nueces County for property taxes related to the Corpus Hotel and treated in Section 5.2 of the Plan.

2.2.81A       <u>Oracle Agreement</u>:  That certain intellectual Property Site License and Support Agreement, effective 9/2/2014, between Couture Hotel Corporation and Micros Systems, Inc. and in which Oracle America, Inc. is the successor in interest to Micros Systems, Inc.

2.2.83        <u>Order</u>: An order or judgment of the Bankruptcy Court as entered on the docket for the Chapter 11 Case.

2.2.84        <u>Petition Date</u>: October 7, 2014.

2.2.85        <u>Plan</u>: The Plan proposed by the Debtor, either in its present form or as it may be amended or modified.

2.2.86        <u>Priority Claims</u>: Allowed Claim entitled to a priority under, inter alia, Section 507(a) of the Bankruptcy Code.

2.2.87        <u>Priority Tax Claim</u>: Any Claim that is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.2.88        <u>Pro Rata</u>: Means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included, to the amount of all Allowed Claims of that Class.

2.2.89        <u>Professional Claim</u>:  A Claim that is filed by a Professional Person pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.2.90        <u>Professional Claim Bar Date</u>: Means the date that is sixty (60) days after the Effective Date.

2.2.91        <u>Professional Person</u>:  Any entity retained or to be compensated pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code

2.2.92        <u>Propel Exit Notes</u>:  The Propel Corpus Exit Note and Propel Dallas Exit Note to be entered into by the Reorganized Debtor, in

favor of Propel Financial Services, LLC, pursuant to Sections 5.3 and 5.4 of the Plan.

2.2.93    <u>Propel Financial</u>:    Propel Financial Services, LLC.

2.2.94    <u>Receiver Excusal Motion</u>:    The Motion to Excuse Receiver from 11 U.S.C. § 543(a) and (b) Compliance [Docket No. 7] filed October 7, 2014, by Armed Forces Bank in the Chapter 11 Case.

2.2.95    <u>Receiver Order</u>:  That certain Order Appointing Receiver of Real Estate entered in the Nevada Receivership Action, signed on September 10, 2014 and entered on September 11, 2014.

2.2.96    <u>Reorganized Debtor</u>:  The legal entity that shall survive the Debtor as of the Confirmation Date.

2.2.97    <u>Sale Motion</u>:  The Debtor's Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 Approving the Sale of the Las Vegas Hotels [Docket No. 89] filed in the Chapter 11 Case.

2.2.98    <u>Sale Order</u>:    The Order Authorizing and Approving Sale of the Las Vegas Hotels Free and Clear of All Liens, Encumbrances and Interests Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004 and 6006 [Docket No. 173] entered in the Chapter 11 Case.

2.2.99    <u>Secured Claim</u>:  A Claim of a Creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under Sections 553 of the Bankruptcy Code, in each case to the extent of the value of said Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in Sections 1111 (b) (2) of the Bankruptcy Code.

2.2.100    <u>Secured Creditor</u>:  Any Creditor that is the Holder of a Secured Claim.

2.2.101    <u>Undetermined Claim</u>:  A Claim that is (a) a Disputed Claim; (b) a Claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined Administrative Claim in respect of an application of a Professional Person; or (d) a claim that is an Unliquidated or Contingent Claim.

2.2.102     <u>Unliquidated Claim</u>: Any Claim that is listed in the Debtor's schedules as "unliquidated."

2.2.103     <u>Unsecured Claim</u>: Any claim against the Debtor whatsoever, other than 1) a Secured Claim, or 2) a Claim that is entitled to priority pursuant to the Bankruptcy Code.

2.2.104     <u>US Bank</u>: US Bank, NA.

2.2.105     <u>US Bank Equipment Lease</u>: That certain Equipment Rental Agreement, Agreement No. 354240, dated February 19, 2013, by and between Hugh Back-St. Mary Enterprises, Inc. and US Bank, related to the rental of a Cannon copy machine.

2.2.106     <u>Usury Lawsuit</u>: That adversary proceeding styled Couture Hotel Corporation a/k/a/ Hugh Black-St. Mary Enterprises, Inc., v. Mansa Capital, Adversary Proceeding Number 15-3095, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division and, in relation to the Motion to Withdraw Reference, pending in part in Cause No. 15-03095-bjh in the United States District Court for the Northern District of Texas, Dallas Division.

2.2.107     <u>Wells Fargo</u>: Wells Fargo Equipment, Inc.

2.2.108     <u>Wells Fargo Ford Lease</u>: That certain Equipment Lease dated May 20, 2014, by and between the Debtor, as lessee, and Wells Fargo, lessor, related to the rental of a 2012 Ford/El Dorado Aero Elite Shuttle Bus, VIN # 1FDAF5GTXCEA42484.

2.2.109     <u>Wells Fargo Starcraft Lease</u>: That certain Equipment Lease dated May 20, 2014, by and between the Debtor, as lessee, and Wells Fargo, lessor, related to the rental of a Starcraft Allstar XL Shuttle Bus, VIN # 5WEXWSKK7DH33310.

2.2.110     <u>WHR</u>: Wyndham Hotels and Resorts, LLC.

2.2.111     <u>WHR Cure Claim</u>: The Allowed Claim of WHR related to the Debtor's assumption of the Dallas Franchise Agreement and treated in Section 5.13 of the Plan.

2.2.112     <u>WHR Initial Fee Note</u>: That certain promissory note dated June 30, 2014, by and between Couture Hotel Corporation, as maker, and Wyndham Hotels and Resorts, LLC, as holder, in the original amount of $105,000.00.

2.2.113    WHR Note:    That certain promissory note dated June 30, 2014, by and between Couture Hotel Corporation, as maker, and Wyndham Hotels & Resorts, LLC and Howard Johnson International, Inc., collectively as holders, in the original amount of $292,524.97.

2.2.114    WHR Note Claim:    The Allowed Claim of WHR related to the WHR Note and treated in Section 5.14 of the Plan.

2.3    Rules of Interpretation.  For purposes of this Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document, pleading or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (iv) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply, unless an alternate calculation is expressly provided herein (i.e. business days).

2.4    Computation of Time.  In computing any period of time prescribed or allowed in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.5    Exhibits and Plan Supplement.  All exhibits are incorporated into and are a part of the Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtor.  Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website.  The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Debtor expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

2.6    Approved Disclosure Statement.  The terms and provisions of the Disclosure Statement, as approved by the Bankruptcy Court, are expressly incorporated herein, except where such provisions of the Disclosure Statement may conflict with the terms of this Plan.  In the event that such a conflict arises, the terms of this Plan and the Confirmation Order shall control, with the Confirmation Order controlling over the terms of this Plan.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS

3.1    Designation of Classes of Claims.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

3.2    Unclassified Claims.

      Allowed Administrative Claims (Unimpaired)
      Allowed Priority Tax Claims (Unimpaired)

3.3    Classified Claims and Interests.

| | |
|---|---|
| Class 2.1: | Secured Claims of Propel Financial Services, LLC (Impaired) |
| Class 2.2: | Secured Claims of Propel Financial Services, LLC (Impaired) |
| Class 2.3: | Secured Claims of Propel Financial Services, LLC (Impaired) |
| Class 2.4: | Secured Claims of Propel Financial Services, LLC (Impaired) |
| Class 3: | Secured Claims of Ford Motor Credit (Impaired) |
| Class 4: | Secured Claim of Ability Insurance Company (Impaired) |
| Class 5: | Secured Claim of Mansa Capital, LLC (Impaired) |
| Class 6.1: | Secured Claim of Shaun Collins (Impaired) |
| Class 6.2: | Secured Claim of Sherwin Williams Company (Impaired) |
| Class 7.1: | Unsecured Claims of HJI (Impaired) |
| Class 7.2: | Unsecured Claims of WHR Related to WHR Cure Claim (Impaired) |
| Class 7.3: | Unsecured Claims of WHR Related to Notes (Impaired) |
| Class 8: | Administrative Convenience Claims (Impaired) |
| Class 9: | General Unsecured Claims (Impaired) |
| Class 10: | Subordinated Claims of Insiders (Impaired) |
| Class 11: | Equity Interests (Impaired) |

### ARTICLE IV
### PAYMENT OF ADMINISTRATIVE CLAIMS
### AND EXPENSES AND CERTAIN PRIORITY CLAIMS

    4.1    Administrative Claim Applications and Deadline.    Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claim Bar Date: (i) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtor, the United States Trustee and all other parties entitled to notice thereof. Failure to file and serve such application by the Administrative Claim Bar Date or Professional Claim Bar Date, whichever date is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code and/or the Bankruptcy Rules.

4.2 <u>Treatment of Administrative Claims</u>. Except to the extent that the Debtor and the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which are Allowed Claims prior to the Effective Date of the Plan shall be paid in full in Cash on or before the Effective Date of the Plan. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in Cash on or before ten (10) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.

4.3 <u>Treatment of Professional Claims</u>. Professional Claims become Allowed the same as Administrative Claims in this Article (Section 4.1), and are treated the same as Administrative Claims in this Article (Section 4.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 4.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 4.1, but shall be filed by the Professional Claims Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such law, rules and procedures as would be otherwise applicable to the same outside of this Plan; (iii) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; and (iv) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis.

4.4 <u>Priority Tax Claims</u>. Priority Tax Claims shall be paid by the Reorganized Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 4.25% per annum accrued thereon on a quarterly basis on January 1, April 1, July 1, and October 1 of each year over a period not exceeding five (5) years after the date of the order for relief, as provided in § 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date. If the Reorganized Debtor fails to make a payment owed on an Allowed Priority Tax Claim pursuant to the terms of the Plan, it shall be deemed an Event of Default. In the event that an event of default occurs with regard to an Allowed Priority Tax Claim, the specific Holder of the Priority Tax Claim shall send a written notification, via first class mail, postage pre-paid, to the Reorganized Debtor of the event of default. The Reorganized Debtor shall have ten (10) days from the date the written notification is sent to cure the event of default in full or the Holder of the Allowed Priority Tax Claim may: (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in the Bankruptcy Court. Any notice of default shall be sent to the Reorganized Debtor pursuant to the notice provisions in Article XII of the Disclosure Statement. Notices sent to the Reorganized Debtor by the Holder of an Allowed Priority Tax Claim shall be sent by first class mail, postage pre-paid.

4.5 <u>2015 Ad Valorem Taxes</u>. Dallas County and Nueces County (collectively, the "Tax Authorities") are the holders of administrative expense claims for year 2015 ad valorem property taxes. The Tax Authorities shall receive payment of their administrative expense claims in the ordinary course of business prior to the state law delinquency date without being required to file and serve a notice of administrative expense claim and request for payment as a condition

of allowance pursuant to 11 U.S.C. Section 503(b)(1)(D). The Tax Authorities shall retain their senior priority liens against the Debtor's properties that secure all amounts ultimately owed for tax year 2015. In the event the Debtor/Reorganized Debtor does not timely pay year 2015 ad valorem property taxes, the Tax Authorities shall provide notice of default to counsel for the Debtor and any other party holding security interests in such property. The Debtor/Reorganized Debtor shall have 15 days from the date of the notice to cure the default. If the Debtor/Reorganized Debtor fails to cure the default the Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to state law.

## ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1     Secured Claim of Propel Financial related to Corpus Propel Note. (Class 2.1) – Class 2.1 consists of Propel Financial Services, LLC's Claim related to that certain Property Tax Payment Agreement dated March 28, 2014 in the original amount of $61,946.20 and executed by the Debtor related to certain ad valorem taxes related to the Corpus Hotel (the "Corpus Propel Note"). The Class 2.1 Claim of Propel Financial shall be treated as an Allowed Secured Claim in the amount of $63,538.76. The Corpus Propel Note and loan documents related to the Corpus Propel Note shall be assumed fully by the Reorganized Debtor with the following exceptions, modification and/or stipulations: (i) the maturity date of the Corpus Propel Note shall be modified to the date that is fifteen (15) years from the Effective Date; (ii) the Class 2.1 Claim shall be paid in monthly installments payments based upon a 180 month amortization, with the first full principal and interest installment due and owing on the first day of the first full month (calculated as thirty days) after the occurrence of the Effective Date and payment due on the first day of each subsequent month thereafter (with all remaining unpaid amounts due and owing on the maturity date, as that term and date are modified by this Plan.); (iii) the interest rate on the Corpus Propel Note shall be modified and changed to nine percent (9%).

The Class 2.1 Claim of Propel Financial is Impaired under the Plan.

5.2     Secured Claim of Propel Financial related to Dallas Propel Note. (Class 2.2) – Class 2.2 consists of Propel Financial Services, LLC's Claim related to that certain Property Tax Payment Agreement dated March 28, 2014 in the original amount of $177,143.61 and executed by the Debtor related to certain ad valorem taxes related to the Dallas Hotel (the "Dallas Propel Note"). The Class 2.2 Claim of Propel Financial shall be treated as an Allowed Secured Claim in the amount of $179,432.72. The Dallas Propel Note and loan documents related to the Dallas Propel Note shall be assumed fully by the Reorganized Debtor with the following exceptions, modification and/or stipulations: (i) the maturity date of the Dallas Propel Note shall be modified to the date that is fifteen (15) years from the Effective Date; (ii) the Class 2.2 Claim shall be paid in monthly installments payments based upon a 180 month amortization, with the first full principal and interest installment due and owing on the first day of the first full month (calculated as thirty days) after the occurrence of the Effective Date and payment due on the first day of each subsequent month thereafter (with all remaining unpaid amounts due and owing on the maturity date, as that term and date are modified by this Plan.); (iii) the interest rate on the Dallas Propel Note shall be modified and changed to nine percent (9%).

The Class 2.2 Claim of Propel Financial is Impaired under the Plan.

5.3    Secured Claim of Propel Financial related to Corpus 2014 Ad Valorem Taxes. (Class 2.3) – Class 2.3 consists of Propel Financial Services, LLC's Secured Claims it purchased from Nueces County related to the 2014 *ad valorem* taxes related to the Corpus Hotel. The Class 2.3 Claims shall be treated as an Allowed Secured Claim in the amount of $62,099.38, which includes all necessary post-petition interest and fees. On or before the Effective Date, the Reorganized Debtor shall execute a promissory note made payable to Propel Financial Services, LLC in an amount equal to sum of the Class 2.3 Claims (the "Propel Corpus Exit Note"). The Propel Corpus Exit Note shall have a maturity date that is fifteen (15) years from the Effective Date. The Propel Corpus Exit Note shall accrue interest at the rate of nine percent (9%) per annum. The Reorganized Debtor shall make 179 monthly payments of principal and interest, with the 180th payment being equal to the remaining balance owed on the Propel Corpus Exit Note. The Reorganized Debtor shall execute all reasonable and necessary loan documents requested by Propel Financial Services, LLC to effectuate the Propel Corpus Exit Note.

The Class 2.3 Secured Claims of Propel Financial are Impaired under the Plan.

5.4    Secured Claims of Propel Financial related to Dallas 2014 Ad Valorem Taxes. (Class 2.4) – Class 2.4 consists of Propel Financial Services, LLC's Secured Claim it purchased from Dallas County related to the 2014 *ad valorem* taxes related to the Dallas Hotel. The Class 2.4 Claim shall be treated as an Allowed Secured Claim in the amount of $172,260.16, which includes all necessary post-petition interest and fees. On or before the Effective Date, the Reorganized Debtor shall execute a promissory note made payable to Propel Financial Services, LLC in an amount equal to sum of the Class 2.4 Claims (the "Propel Dallas Exit Note"). The Propel Dallas Exit Note shall have a maturity date that is fifteen (15) years from the Effective Date. The Propel Dallas Exit Note shall accrue interest at the rate of nine percent (9%) per annum. The Reorganized Debtor shall make 179 monthly payments of principal and interest, with the 180th payment being equal to the remaining balance owed on the Propel Dallas Exit Note. The Reorganized Debtor shall execute all reasonable and necessary loan documents requested by Propel Financial Services, LLC to effectuate the Propel Dallas Exit Note.  No further ad valorem taxes shall be financed without the express consent of the affected secured parties.

The Class 2.4 Secured Claims of Propel Financial are Impaired under the Plan.

5.5    Intentionally omitted.

5.6    Intentionally omitted.

5.7    Secured Claims of Ford Motor Credit. (Class 3) – Class 3 shall consist of the Allowed Secured Claims of Ford Motor Credit Company LLC ("Ford"). More specifically, Class 3 shall consist of the claims alleged by Ford in Proofs of Claim 1, 2, and 3 filed in the Claims Register, as may be amended, supplemented and/or modified from time to time.

5.7.1    Class 3(a). The Class 3(a) Claim consists of Ford's claim related to that specific 2010 Ford E350 Van, with a vehicle identification number ("VIN") of

1FBSS3BL4ADA32184 and is the basis of Proof of Claim No. 1 filed in the Claims Register. Ford has a perfected security interest in the Class 3(a) Vehicle. Ford shall have an Allowed Secured Claim in the amount of $6,177.06 minus any post-petition adequate protection payments made by the Debtor during the pendency of the Chapter 11 Case related to the Class 3(a) vehicle. Ford shall retain its lien on the Class 3(a) Vehicle until the claims related to the Class 3(a) Vehicle are paid in full. The Reorganized Debtor agrees to be bound by the terms of the existing loan documents between Debtor and Ford, and the terms of those loan documents shall govern, save and except the maturity date is extended by sixty (60) days. The first payment on the Class 3(a) Claim shall be due on the 21st day of the first full month following the Effective Date. Notwithstanding the foregoing, the Reorganized Debtor shall continue to make adequate protection payments as provided in the Ford Adequate Protection Order until payments begin on the Class 3(a) Claims, as provided herein. The monthly amount for the Class 3(a) Vehicle shall remain $471.04 per month.

5.7.2 <u>Class 3(b)</u>. The Class 3(b) Claim consists of Ford's claim related to that specific 2010 Ford E350 Van, with a vehicle identification number ("VIN") of 1FBSS3BL7ADA62151 and is the basis of Proof of Claim No. 2 filed in the Claims Register. Ford has a perfected security interest in the Class 3(b) Vehicle. Ford shall have an Allowed Secured Claim in the amount of $6,240.48 minus any post-petition adequate protection payments related to the Class 3(b) vehicle. Ford shall retain its lien on the Class 3(b) Vehicle until the claims related to the Class 3(b) Vehicle are paid in full. The Reorganized Debtor agrees to be bound by the terms of the existing loan documents between Debtor and Ford, and the terms of those long documents shall govern, save and except the maturity date is extended by sixty (60) days. The first payment on the Class 3(b) Claim shall be due on the 21st day of the first full month following the Effective Date. Notwithstanding the foregoing, the Reorganized Debtor shall continue to make adequate protection payments as provided in the Ford Adequate Protection Order until payments begin on the Class 3(b) Claims, as provided herein. The monthly amount for the Class 3(b) vehicle shall remain $572.66 per month.

5.7.3 <u>Class 3(c)</u>. The Class 3(c) Claim consists of Ford's claim related to that specific 2013 Ford E350 Van, with a vehicle identification number ("VIN") of 1FBSS3BL9DDA94250 and is the basis of Proof of Claim No. 3 filed in the Claims Register. Ford has a perfected security interest in the Class 3(a) Vehicle. Ford shall have an Allowed Secured Claim in the amount of $31,794,74 minus any post-petition adequate protection payments related to the Class 3(c) vehicle. Ford shall retain its lien on the Class 3(c) Vehicle until the claims related to the Class 3(c) Vehicle are paid in full. The Reorganized Debtor agrees to be bound by the terms of the existing loan documents between Debtor and Ford, and the terms of those documents shall govern, save and except the maturity date is extended by sixty (60) days. The first payment on the Class 3(c) Claim shall be due on the 21st day of the first full month following the Effective Date. Notwithstanding the foregoing, the Reorganized Debtor shall continue to make adequate protection payments as provided in the Ford Adequate Protection Order until payments begin on the Class 3(c) Claims, as provided herein. The monthly amount for the Class 3(c) vehicle shall remain $960.55 per month.

5.7.4   Default.   In the event that the Reorganized Debtor defaults under any provision of the contracts related to the Class 3 Vehicles, Ford shall send a written notification, via first class mail, postage pre-paid, to the Reorganized Debtor at the address provided in Article XII of the Disclosure Statement. The Reorganized Debtor shall have ten (10) days from the date post-marked on the notice to cure any default alleged in the notice, or the default shall become a Ford Final Default. Ford shall also send a copy of any default notice to Debtor's counsel at the address provided on PACER. The Reorganized Debtor shall be entitled to two written notifications of defaults. After two written notification are sent, failure of the Reorganized Debtor to cure any default on or before ten (10) days from the date of occurrence of the default shall be a Ford Final Default. In the event that the Debtor or Reorganized Debtor surrenders any of the Class 3 Vehicles, or files a modification of this Plan to surrender any of the Class 3 Vehicles, such a modification shall be considered a Ford Final Default as to that specific vehicle, without the necessity of sending a written notification.

5.7.5   Insurance.   The Reorganized Debtor shall maintain full coverage insurance on the Class 3 Vehicles in the same amounts specified in the contracts with Ford.

5.7.6   Remedies.   In the event of a Ford Final Default as defined and outlined in the section 5.7.4, Ford shall be entitled to repossess, sell, and exercise its state law and contractual remedies related to the vehicle secured by the contract in which a Ford Final Default has occurred. Further, in the event of a Ford Final Default, Ford shall not be required to send any subsequent notices regarding its intent to accelerate the debt or of the intention to repossess the vehicle or of any right to cure. In the event of a Ford Final Default, and in the event that the vehicle is not voluntarily surrendered, Ford may seek all writs and other state court order necessary to obtain possession of the vehicle.

5.7.7   Notice. Debtor shall notify Wilcox Law, P.L.L.C., P.O. Box 201849, Arlington, Texas 76006, Attention: Bankruptcy Address Change, of any change in the Reorganized Debtor's mailing address for the purposes of sending any written notification required herein.

5.7.8   Jurisdiction.   Notwithstanding any other provisions in this Plan related to jurisdiction, including Article XI, Debtor agrees and stipulates that Ford shall only be subject to the jurisdiction of the Bankruptcy Court regarding core proceedings, or actions arising under or related to the bankruptcy of the Debtor. Debtor acknowledges that Ford in no way consents to an extension of jurisdiction beyond such proceedings.

The Class 3 Claims of Ford are Impaired under the Plan.

5.8   Secured Claims of Ability Insurance Company. (Class 4) – Class 4 shall consist of the Claims of Ability Insurance Company ("Ability").  Ability shall have an Allowed Secured Claim in the amount of $3,685,740.51 (the "Ability Claim"). Based upon the treatment specified in Section 5.8.1, the monthly amount owed will be $19,967.06, with a balloon payment on the 36th payment equal to $3,428,619.09.

5.8.1 <u>Treatment</u>. In full and final satisfaction, discharge and release of the Ability Claim, the Reorganized Debtor shall pay the Ability Claim as follows:

(i) <u>Interest</u>. Interest shall accrue on the Ability Claim, on and after the Effective Date at the rate of four and one quarter percent (4.25%) interest per annum.

(ii) <u>Amortization</u>. The Ability Claim shall be amortized over twenty-five (25) years, and repaid monthly following the Effective Date.

(iii) <u>Term</u>. The Ability Claim shall be repaid on a term of thirty-six (36) months such that the Reorganized Debtor shall pay Ability thirty-five (35) equal monthly payments of amortized principal and interest, as provided above, with the thirty-sixth (36th) payment being a balloon payment of the Ability Claim, with then accrued and unpaid interest, then unpaid.

(iv) <u>Commencement</u>. The first principal and interest payment shall be due on the first Business Day of the first month following the expiration of thirty (30) days from the Effective Date, and each successive payment shall be due on the first day of each successive month.

(v) <u>Default and Remedies</u>. In the event that the Reorganized Debtor fails to make a payment or comply with any of the obligations to Ability specified under this Plan related to the Ability Claim, or fails to comply with any obligation or requirement specified in the Ability loan documents, Ability may transmit such failure to the Reorganized Debtor and its undersigned counsel, in writing, overnight delivery, at the address for the Debtor in Article XII of the Disclosure Statement and at the address for its counsel listed on the coversheet of this Plan. The Reorganized Debtor shall then have five (5) Business Days to cure any alleged default. In the event that the Reorganized Debtor does not cure the alleged default within the five (5) Business Days, the Reorganized Debtor shall be in default of its obligations to Ability, and Ability may exercise any and all rights it may have against the Reorganized Debtor, but only as such rights are modified by this Plan, subject to any notice or other obligations under the Inter-Creditor Agreement. Notwithstanding the foregoing, any provisions of the Ability loan documents not expressly modified by the Plan or consented to or revised by the Inter-Creditor Agreement shall remain in force and effect. Further, the Reorganized Debtor shall be entitled to no more than three written notifications of defaults. After three written notifications are sent, failure of the Reorganized Debtor to cure any default on or before ten (10) days from the date of occurrence of the default shall be a final default.

5.8.2 <u>Preservation of Liens</u>. Ability shall retain all liens, security interests, other interests, and rights in, to, and against all property of the Debtor and the Estate securing the Ability Claim under its existing loan documents, including, without limitation, the first

priority, perfected, valid and enforceable lien (subject only to priming liens for the benefit of *ad valorem* tax claims) against the Corpus Hotel, with all such liens, security interests, other interests and rights surviving confirmation of the Plan and the transfer of property from the Debtor and its Estate to the Reorganized Debtor and securing, on and after the Effective Date, all obligations of the Reorganized Debtor to Ability for and on account of the Ability Claim, as Allowed, modified and treated by this Plan. Any exercise of any rights or foreclosure by Ability of any such liens, security interests, other interests, and rights, shall be in compliance with the terms of this Plan, including the modification and treatment of the Ability Claim, and shall be compliance with all applicable law. Notwithstanding the foregoing, any provisions of the Ability loan documents not expressly modified by the Plan or consented to or revised by the Inter-Creditor Agreement shall remain in force and effect.

5.8.3   <u>Prepayment</u>.   Notwithstanding anything contained to the contrary in any of Ability's loan documents, the Reorganized Debtor may prepay the Ability Claim in full, with all then accrued interest, at any time without any prepayment or other penalty. Any prepayment by the Reorganized Debtor that is less than the full amount of the Ability Claim shall be applied by and credited against the then-outstanding principal balance owed on the Ability Claim as otherwise provided for in this section, and any future interest on the Ability Claim shall be calculated based on the reduced principal of the Ability Claim remaining after application of the prepayment. Notwithstanding the foregoing, any payments made pursuant to this provision shall not be less than $5,000.00.

5.8.4   <u>Rights Against Guarantors</u>.   For the avoidance of doubt, nothing in this Plan discharges any claim that Ability may have against any person other than the Debtor and Reorganized Debtor for or on account of any claim by Ability against the Debtor, including, without limitation, for the Ability Claim.

5.8.5   <u>Assumption of Ability Loan Documents</u>.   The existing loan documents between the Debtor and Ability Insurance Company (*i.e.* that certain Promissory Note (the "Ability Note"), Deed of Trust and Security Agreement (the "Ability DOT"), Absolute Assignment of Leases and Rents (the "Ability Assignment of Rents"), and that certain Forbearance and Loan Modification Agreement (the "Forbearance Agreement") including any amendments or modifications thereto) shall be fully assumed by the Reorganized Debtor, and will govern, save and except the exceptions, modifications and/or stipulations specified in this Plan or that certain Inter-Creditor Agreement. However, upon request of Ability, the Reorganized Debtor shall execute such new notes, security agreements, deeds of trust, and other documents and instruments evidencing the modification and treatment of the Ability Claim by this Plan, *provided that* any of the foregoing shall: (i) comply with the modification and treatment of the Ability Claim as provided for in this Plan; (ii) do not contain any provisions inconsistent with such modification and treatment; (iii) do not contain any default covenants or provisions not provided for in this Plan; and (iv) in the event of requested provisions not provided for in this Plan, such provisions are agreeable to the Reorganized Debtor.

The Class 4 Claims of Ability are Impaired under the Plan.

5.9     Secured Claims of Mansa Capital, LLC. (Class 5) – Class 5 shall consist of all the Claims of Mansa Capital, LLC ("Mansa"), including, without limitation, all liens, security interests, alleged non-compete agreements, and other rights against the Debtor, the Estate, the Guarantors, and their property securing the same. For the avoidance of doubt, Mansa shall have no Unsecured Claim under the Plan.

5.9.1     Mansa Claim: Mansa shall have an allowed Secured Claim on the Effective Date in the amount of $9,875,000 (the "Mansa Claim"). For avoidance of doubt, the Section 1111(b) claim of Mansa is withdrawn by agreement.

5.9.2     Treatment.     In full and final satisfaction, discharge, and release of the Mansa Claim, the Reorganized Debtor shall pay the Mansa Claim as follows:

(i)     Principal. The principal amount to be repaid by the Reorganized Debtor is the amount equal to the Mansa Claim.

(ii)     Cash Payments. Debtor 1) has paid to Mansa the sum of $131,516.34 in Cash on or about November 18, 2015 (the "First Cash Payment"); and 2) shall pay to Mansa the sum of $68,483.66 on or before the 120th day after the Effective Date (the "Second Cash Payment"). No interest shall accrue or be paid on the Second Cash Payment unless there is a default on the Second Cash Payment. Failure to timely make the Second Cash Payment by the deadline shall be an event of default. Payments made under Section 5.9.2 (ii) (1) and (2) are principal payments that shall reduce the principal balance of the Mansa Claim upon receipt.

(iii)     Interest. Interest shall accrue on the Mansa Claim, on and after the

Effective Date, at the rate of:

a)     six and three-quarter percent (6.75%) interest per annum; plus

b)     one percent (1%) per annum of Payment in Kind ("PIK") interest, payable on a monthly basis by adding 1/12th of 1% to the outstanding principal balance of the Mansa Claim at the end of each month following the Effective Date until the Mansa Claim is paid in full. PIK interest shall be pro-rated for the first month following the Effective Date if such month is not a full monthly period. The minimum PIK interest that shall accrue shall be for a full 24-month period and, to the extent necessary, that shall be treated as a prepayment penalty added to the Mansa Claim if paid prior to the expiration of 24 months following the Effective Date. Specifically, in the event that the Mansa Claim is paid in full prior to 24 months after the Effective Date, the amount of PIK interest that shall be payable on such claim as a prepayment penalty shall be equal to 24 full months of PIK interest from the Effective Date (adjusted by deducting any amounts accrued through the payment date that are already reflected in the then existing Mansa Claim principal balance). For example, if the Mansa Claim is paid after 13 months, then the Mansa Claim will already include the first 13 months of PIK interest as part of its principal balance, and

an additional 11 months of PIK interest shall be added as a prepayment penalty. On the other hand, if the Mansa Claim is paid in full at some point after 24 months, then the Mansa Claim will include only the PIK interest that has accrued through the payment date. PIK interest shall accrue and be added to the outstanding principal balance of the Mansa Claim, but is not required to be paid until the maturity date or such earlier date that the Mansa Claim is paid in full.

(iv)     Amortization. The Mansa Claim shall be amortized over a thirty (30) years, and the Mansa Claim shall be repaid through monthly amortization payments commencing the first Business Day of the first month following the Effective Date.

(v)     Term. The Mansa Claim shall be repaid on a term of forty-eight (48) months from the Effective Date such that the Reorganized Debtor shall pay Mansa forty-seven (47) equal monthly payments of amortized principal and interest, as provided above, with the forty eighth (48th) payment being a balloon payment equal to the Mansa Final Payment as specified in paragraph 5.9.2(ix).

(vi)     Commencement. The first principal and interest payment shall be due on the first Business Day of the first month following the the Effective Date, and each successive payment shall be due on the first day of each successive month.

(vii)     Default and Deeds in Lieu of Foreclosure. On the Effective Date, the Reorganized Debtor shall deliver to Mansa Deeds in Lieu of Foreclosure for both the Dallas Hotel and the Corpus Hotel in form and substance reasonably satisfactory to Mansa. Mansa shall hold, but not have the right to record, such Deeds in Lieu of Foreclosure in the absence of an Uncured Payment Default, as defined below, or a Three Strikes Default, as defined below. In the event that the Reorganized Debtor fails to timely make 1) the Second Cash Payment; or 2) a monthly payment of principal and interest to Mansa specified under this Plan and such payment remains uncured for thirty (30) days following the date that any such monthly payment is due (hereinafter, any one of 1 or 2, an "Uncured Payment Default"), the Reorganized Debtor shall be in default of its obligations to Mansa. In the event that the Reorganized Debtor fails to timely make any of the monthly payments towards the Mansa Claim described above, but cures such payment within thirty (30) days (such payment, a "Cured Payment Default"), and more than three (3) such Cured Payment Defaults occur during any twelve (12) month period (a "Three Strikes Default"), the Reorganized Debtor shall be in default of its obligations to Mansa. In the event of (x) an Uncured Payment Default or (y) a Three Strikes Default, Mansa may record the Deeds in Lieu of Foreclosure, make demand on Debtor to commence a sale process contemplated herein, and/or take any other actions permitted under the Mansa loan documents, the Stock Pledge Agreement (contemplated in Section 5.9.4), or in law or equity, including in regard to any other collateral identified in Section 5.9.4 below; provided, however, that notwithstanding anything to the contrary contained herein, any action taken by Mansa in regards to the Corpus Hotel or the Stock Pledge Agreement must be consistent with the Inter-Creditor Agreement.

(viii)   Application of Default Remedies Against Obligations.  Should the Reorganized Debtor have an Uncured Payment Default or should a Three Strikes Default occur, giving rise to Mansa exercising remedies, Mansa agrees to pursue relief in the following manner as to allow adjustment of any outstanding amounts then owed to Mansa, including any outstanding principal or interest owed on the Mansa Claim in respect of the value received computed as follows:

(a)   If upon exercise of the Deed in Lieu of Foreclosure of the Dallas Hotel or upon demand from Mansa, Mansa (or Debtor upon demand) shall retain a reasonably experienced hotel broker to conduct marketing and a sale of the Dallas Hotel to be completed within 90 to 120 days following demand or recordation of the deed in lieu, or such other period as such broker may advise to reasonably expose the Dallas Hotel to the market to complete such a sale which will establish the orderly liquidation value of the collateral from which net proceeds received (less all transaction and carrying expenses incurred) will be applied against the Mansa Claim and any accrued but unpaid interest, including PIK Interest, with any surplus being the property of the Debtor;

(b)   If upon exercise of the Deed in Lieu of Foreclosure of the Corpus Christi Hotel  or demand from Mansa (both in strict conformity with the terms of the Inter-Creditor Agreement), Mansa (or Debtor upon demand) shall retain a reasonably experienced hotel broker to conduct marketing and a sale of the Corpus Christi Hotel to be completed within 90 to 120 days of recordation of the deed in lieu or demand, or such other period as such broker may advise to reasonably expose the Corpus Christi Hotel to the market to complete such a sale which will establish the orderly liquidation value of the collateral from which net proceeds received (less all transaction and carrying expenses incurred) will be applied first against any outstanding balance, if any, owing under the Ability Claim, then against the Mansa Claim and any accrued but unpaid interest, including PIK Interest, with any surplus being the property of the Debtor..  Notwithstanding anything to the contrary contained in this subparagraph (b), Mansa's exercise of remedies in relation to the Corpus Hotel shall be subject to the Inter-Creditor Agreement and the time periods therein, unless subsequently expressly modified by Ability and Mansa in writing;

(c)   To the extent of any remaining unpaid amounts due and owing under the Mansa Claim (including any accrued but unpaid interest, including PIK Interest) following (a) and (b) herein, or in the event the Debtor is non-compliant with (a) and (b) above, Mansa may, at its election, pursue remedies against other collateral and engage in any reasonable efforts to sell such other collateral to obtain net cash proceeds to pay down the remaining balance owed under the Mansa Claim and any accrued but unpaid interest, including PIK Interest, including pursuing the Guarantor Joint Proponent Property or pledged equity in the Reorganized Debtor by the Guarantors; and

(d)   In the event the personal guaranties of Guarantors have not been extinguished as set forth herein on or at the time of any Uncured Payment Default or a Three Strikes Default, Mansa is free to exercise rights and remedies under those guarantees to the fullest extent permitted under those documents (to the extent of the unpaid portion of the Mansa Claim, including accrued but unpaid interest, including PIK interest) with net

proceeds applied against the amounts Mansa may recover with corresponding adjustment, if appropriate and sufficient recoveries applied, against the Mansa Claim and any accrued but unpaid interest, including PIK Interest, in light of the other remedies above.

(e)     Nothing contained herein shall prevent the current holder of the Mansa Claim from credit bidding its debt in any sale performed under paragraphs (a) or (b) herein, except that, in regards to a non-foreclosure sale, Mansa or the current holder of the Mansa Claim shall only be allowed to credit bid its debt regarding a sale of the Corpus Christi Hotel if the Ability Claim is concurrently being paid off (unless expressly agreed to the contrary by Ability in writing). Nothing herein precludes Ability from exercising its remedies, including foreclosing on its deed of trust, and, in an Ability-conducted foreclosure sale, nothing herein allows Mansa to credit bid at such sale unless or until the Ability lien has been paid in full.

(ix) <u>Mansa Final Payment</u>. The Mansa Final Payment shall be the outstanding amount of the Mansa Claim (together with any PIK interest that has accrued thereon) remaining as of the 48 month Term provided for in this Plan, after application of all prior monthly payments towards the Mansa Claim as provided herein.

(x)     <u>Effect of Final Payment</u>. Upon payment of the Mansa Final Payment which should result in payment in full of the Mansa Claim, the Reorganized Debtor's personal obligation and liability for the Mansa Claim shall be satisfied, paid, and discharged in full.

5.9.3   <u>Preservation of Liens and Rights</u>. Mansa shall retain all liens, security interests, other interests, and rights in, to, and against all property of the Debtor and the Estate securing the Mansa Claim under the Mansa Loan Documents, including, without limitation: (i) the first priority, perfected, valid and enforceable lien (subject only to priming liens for the benefit of *ad valorem* tax claims) against the Dallas Hotel, (ii) the perfected, valid and enforceable lien (subject to the first priority lien held by Ability Insurance Company and any priming liens for the benefit of *ad valorem* tax claims) against the personal property related to the Corpus Hotel, and (iii) the perfected, valid and enforceable liens against any and all cash of the Debtor and the Estate, including in deposit accounts, receivables, and all such other tangible and intangible property of the Debtor's estate within the scope of the granted security interest to Mansa, with all such liens, security interests, other interests and rights surviving confirmation of the Plan and the transfer of property from the Debtor and its Estate to the Reorganized Debtor and securing, on and after the Effective Date, all obligations of the Reorganized Debtor to Mansa for and on account of the Mansa Claim, as Allowed, modified and treated by this Plan. Couture shall otherwise comply with all covenants and obligations under the loan documents, except as expressly modified or excused herein. In the event any party asserts or claims interest in any collateral provided to Mansa either prepetition or under the Plan herein and such party seeks to exercise rights against such collateral (and such party's exercise of rights is not promptly halted, cured or remedied by the Debtor or Guarantors), the actions of such party shall constitute a default under the Mansa Note and in regards to the Mansa Claim, and Mansa (or its assignee or successor) shall be entitled to exercise any remedies to protect its

rights. Upon payment of the Mansa Claim in full, all liens, security interests, other interests and rights in, to, and against all property of the Debtor, the Estate, and the Guarantors securing the Mansa Claim shall be extinguished and shall no longer attach to the such property. Any exercise of any rights or foreclosure by Mansa of any such liens, security interests, other interests, and rights, shall be in compliance with the terms of this Plan, including the modification and treatment of the Mansa Claim, and shall be in compliance with all applicable law and, to the extent the remedies relate to collateral addressed therein, the Inter-Creditor Agreement.

5.9.4    <u>Additional Liens and Collateral</u>.  In addition to the Liens preserved pursuant to paragraph 5.9.3, Mansa shall receive on the Effective Date as additional collateral for the Mansa Claim 1) a pledge by the Guarantors of their stock and equity in the Debtor, which accounts for 100% of the ownership of Debtor (accompanied by appropriate documentation and possession of such stock and stock power or other certificates reflecting this 100% ownership, which if not yet certificated, shall be issued by the Effective Date with appropriate entity documentation); 2) a lien, junior in priority to any validly existing liens in favor of Mr. Blomfield's prior spouse in an amount not to exceed $500,000 (US$) as of the date of filing of this amended plan, on the Guarantor Joint Proponent Property (along with any revision to any trust agreements to the reasonable satisfaction of Mansa to provide for the protections and rights in association with such lien) and 3) a lien, junior in priority to Ability's existing superior liens as of the date of filing of this amended plan, on the Corpus Hotel. Consistent with paragraph 5.9.3, any exercise of any rights or foreclosure by Mansa of any such liens, security interests, other interests, and rights, shall be in compliance with the terms of this Plan, including the modification and treatment of the Mansa Claim, and shall be in compliance with applicable law and, to the extent the remedies relate to collateral addressed therein, the Inter-Creditor Agreement. Mansa shall also have the right to file (and Debtor shall cooperate to execute in such regard) to confirm the liens and security interests Mansa possess herein.  To the extent the Reorganized Debtor seeks to refinance the first lien on the Corpus Hotel, Mansa (x) consents to such refinancing and (y) agrees that Mansa or its successors, transferees, or assigns will use commercially reasonable efforts to cooperate with the refinancing; *provided that* there is no increase in the principal amount owing as a consequence of such refinancing and that Mansa's or its successor's, transferree's or assignee's collateral coverage in the Corpus Hotel is no worse after such refinancing vis a vis the Corpus Hotel, than Mansa's collateral coverage in that hotel was on the Effective Date.

5.9.5    <u>Prepayment</u>.    Subject to the treatment provided in paragraph 5.9.2(iii)(b) regarding PIK interest, the Reorganized Debtor shall have the ability to pre-pay in full (directly or through any refinance) the Mansa Claim at any time or from time to time without incurring any pre-payment penalty or interest.

5.9.6    <u>Rights Against Guarantors</u>.    Except as provided in paragraph 5.9.8 below, nothing in this Plan discharges any claim that Mansa may have against any person other than the Debtor and Reorganized Debtor for or on account of any claim by Mansa against the Debtor, including, without limitation, for the Mansa Claim.

5.9.7    Assumption of Covenants and Agreements in Mansa Loan Documents and Execution of New Documents.    The agreements and coventants contained in the existing loan documents between the Debtor and Mansa, including the note, deed of trust, and security agreements, as well as all other loan documents regarding Mansa loan (the "Mansa Loan Documents") shall be fully assumed by the Reorganized Debtor, and will govern save and except those exceptions, modifications, and/or stipulations in the Plan.  To the extent any provision of the Mansa Loan Documents are in conflict with provisions within the Inter-Creditor Agreement, such provisions shall be deemed to have been modified to the minimum extent necessary, and only to the applicable collateral, to give effect to the provisions of the Inter-Creditor Agreement vis-à-vis Ability. Upon request by Mansa, the Reorganized Debtor shall execute such new notes, security agreements, deeds of trust, and other documents and instruments evidencing the modification, treatment of, and collateral securing payment of the Mansa Claim by this Plan, *provided that* any of the foregoing shall: (i) comply with the modification and treatment of the Mansa Claim as provided for in this Plan; (ii) do not contain any provisions inconsistent with such modification and treatment; (iii) do not contain any default covenants or provisions inconsistent with the provisions of this Plan; and (iv) in the event of requested provisions not provided for in this Plan, such provisions are consistent with the treatment and protections being provided for the Mansa Claim set forth in this Plan, and the language is agreeable to the Reorganized Debtor.

5.9.8    Additional Provisions applicable to the Mansa Claim.

i)    Assignability of Note. Mansa shall be entitled to sell and/or assign all of its interests in the Mansa Claim, the Mansa Note, the Guaranties, and any collateral protections and rights afforded Mansa herein in its sole and unilateral discretion.  To the extent that Mansa's sale or assignment of the Mansa Note, or any modified Mansa Note, the Mansa Claim, the Guaranties and the collateral protections and rights afforded Mansa herein requires the consent of the Reorganized Debtor or any of the Guarantors, they hereby consent for all purposes.

ii)    Dismissal of the Guaranty Lawsuits. The Guaranty Lawsuits shall be dismissed without prejudice within 10 calendar days following the Effective Date, and further subject to the Mutual Release provision contained in paragraph 5.9.8(v) below. Mansa shall bear responsibility for the filing of pleadings necessary to effectuate the dismissal contained herein.

iii)    Dismissal of the Usury Lawsuit.  The Usury Lawsuit shall be dismissed with prejudice, with the dismissal to be provided for in the confirmation order of this Plan and by Order of the Court in the Usury Lawsuit, and with such dismissal effective on the Effective Date. The Debtor shall be responsible for the filing of pleadings necessary to effectuate the dismissal contained herein.

iv)    Guarantors' Subordinated Claims against Debtor.  The Guarantors shall receive no payments on the subordinated claims unless and until Mansa (or its assignee or successor) have been paid in full. To the extent that Mansa or its successor,

transferee, or assignee exercises any remedies as a result of a default (e.g. foreclosure on any collateral), the Guarantors' subordinated claims shall be automatically extinguished or, if Mansa should so elect in its sole discretion following its exercise of remedies, converted to equity in the Debtor.

   v) <u>Mutual Releases</u>.  On the Effective Date, the Debtor, Mansa, and the Guarantors shall enter into mutual releases subject to exclusion of ongoing obligations and requirements herein which shall not be released until such time as fully discharged or paid as provided for herein, with such mutual releases to be effective on the Effective Date; provided, however, that the existing ongoing guaranty obligations of the Guarantors shall terminate 12 months following the Effective Date in the absence of any payment defaults that remained uncured for five (5) business days (a "Guarantor Qualifying Default").  If a Guarantor Qualifying Default occurs, then the guaranty obligations of the Guarantors shall terminate 12 months following the last Guarantor Qualifying Default. By way of example, if a Guarantor Qualifying Default occurs in month 6 and again in month 13, then the guaranty obligations of the Guarantors would terminate after month 25, absent any additional Guarantor Qualifying Default. The statute of limitations is hereby tolled by agreement of the Guarantors and Mansa (and such agreement is binding upon and inures to the benefit of any successors and assigns of Mansa) until the guaranty obligations of the Guarantors are terminated as provided herein or, if not terminated, sixty (60) days following a default by the Debtor of any of its obligations under this amended plan.

The Class 5 Secured Claim of Mansa Capital, LLC is Impaired under the Plan.

  5.10 <u>Secured Claim of Shaun Collins</u>. (Class 6.1) – The Class 6.1 Claim of Shaun Collins shall be treated as an Allowed Secured Claim in the amount of $22,391.51. The Class 6.1 Claim shall be paid in full in Cash on or before the date that is sixty (60) days after the Effective Date.

  The Class 6.1 Secured Claim of Shaun Collins is Impaired under the Plan.

  5.11 <u>Secured Claim of Sherwin Williams Company</u>. (Class 6.2) – The Class 6.2 Claim of Sherwin Williams shall be treated as an Allowed Secured Claim in the amount of $3,290.69. The Class 6.2 Claim shall be paid in full in Cash on or before the date that is sixty (60) days after the Effective Date.

  The Class 6.2 Secured Claim of Sherwin Williams is Impaired under the Plan.

  5.12 <u>Unsecured Claims of HJI</u>. (Class 7.1) – Class 7.1 shall consists of HJI's Claims against the Debtor related to the HJI Las Vegas Franchise Agreement and the HJI Corpus Franchise Agreement. The treatment of the Class 7.1 Claims shall conform and be consistent with the treatment specified in the Franchisor Stipulation.

    5.12.1 <u>HJI Las Vegas Franchise Agreement</u>. HJI shall have an Allowed Claim in Class 7.1(a) in the amount of $17,929.53 (the "HJI Las Vegas Prepetition Claim"). The HJI Las Vegas Prepetition Claim shall be paid in full in Cash on or before the Effective Date.

5.12.2 <u>HJI Rejection Damages Claim</u>. Pursuant to Section 7.5.2, HJI shall have an Allowed Claim in Class 7.1(b) in the amount of $40,000.00 related to the rejection of the HJI Las Vegas Franchise Agreement. The HJI Rejection Damages Claim shall be paid in quarterly installments over two (2) years.

5.12.3 <u>HJI Corpus Franchise Agreement</u>. HJI shall have an Allowed Claim in Class 7.1(c) in the amount of $8,964.88 (the "HJI Corpus Claim"). The HJI Corpus Claim shall be paid in full in Cash on or before the Effective Date.

The Class 7.1 Claims of HJI are Impaired under the Plan.

5.13 <u>Unsecured Claim of WHR Related to WHR Cure Claim</u>. (Class 7.2) – Class 7.2 shall consist of the Cure Claim of WHR related to the Dallas Franchise Agreement. Consistent with the Franchisor Stipulation, WHR shall have an Allowed Claim in the amount of $22,573.72 (the "WHR Cure Claim"). The WHR Cure Claim shall be paid in full in Cash on or before the Effective Date.

The Class 7.2 Claim of WHR is Impaired under the Plan.

5.14 <u>Unsecured Claims of WHR Related to Notes</u>. (Class 7.3) – Class 7.3 shall consist of the Claims of WHR related to the WHR Note and the WHR Initial Fee Note. Consistent with the Franchisor Stipulation, WHR shall be deemed as having an allowed claim in the amount of $397,534.97 related to the indebtedness owed under the notes (the "WHR Note Claim"). However, there shall be no distribution on the WHR Note Claim *provided that* the Debtor does not default under the stipulation agreed to with WHR and HJI, the HJI Corpus Franchise Agreement, the Dallas Franchise Agreement, the WHR Note, and/or the WHR Initial Fee Note. To the extent the WHR Note or WHR Initial Fee Note have been accelerated, same are de-accelerated and reinstated to their original terms. WHR shall remain obligated to forgive the Debtor's obligations under the notes in the increments and on the time schedule set forth in the respective notes. Upon the Debtor timely curing any alleged defaults to WHR, the WHR Initial Fee Note shall be forgiven pursuant to its terms and the year one (1) reduction/forgiveness of the WHR Note shall be effectuated pursuant to the terms of the WHR Note.

The Class 7.3 Claim of WHR is Impaired under the Plan.

5.15 Intentionally Omitted.

5.16 <u>Administrative Convenience Claim</u>. (Class 8) – The Class 8 Administrative Convenience Claims shall consist of (a) all Allowed Unsecured Claims that equal $1,000.00 or less and (b) any Allowed Class 9 General Unsecured Claims in excess of $1,000.00 whose Holders elect in writing to reduce their Claim to $1,000.00. Allowed Class 8 Administrative Convenience Claims shall be paid 100% of their Allowed Claim on or before the date that is sixty (60) days after the Effective Date in full satisfaction of their Allowed Claim (the "Convenience Class Payments").

The Class 8 Administrative Convenience Claims are Impaired under the Plan.

5.17    <u>General Unsecured Claims</u>. (Class 9) – The Class 9 General Unsecured Claims consist of all other Allowed Unsecured Claims against the Debtor not placed in any other Class under the Plan. Creditors holding Allowed Class 9 General Unsecured Claims shall be paid 100% of their Allowed Claims plus two percent (2%) per annum in five payments (the "Class 9 Distributions"). The first Class 9 Distribution shall occur on the Effective Date and shall consist of 20% of the Allowed Class 9 Claims. The Reorganized Debtor shall make subsequent annual Class 9 Distributions of 20% of the Allowed Class 9 Claims on the first, second and third anniversaries of the Effective Date. The final Class 9 Distribution shall occur on the Fifth anniversary of the Effective Date and shall consist of the balance owed of any Allowed Class 9 Claim. The Reorganized Debtor may prepay, pro rata, any portion of the Allowed Class 9 Claims at any point without penalty.

Value Place Franchise Services n/k/a WoodSpring Suites Franchise Services LLC shall have an allowed Class 9 General Unsecured Claim in accordance with the treatment specified in that certain Stipulation Regarding Claims and Treatment of Claims Held by Value Place Franchise Services LLC and the Debtor [Docket No. 317] and that certain Order Granting Debtor's Emergency Motion to approve Settlement and Stipulations With Franchisors [Docket No. 359].

The Class 9 General Unsecured Claim are Impaired under the Plan.

5.18    <u>Subordinated Claims of Insiders</u>. (Class 10) – Class 10 consists of the Claims held by John Blomfield, Brittany Blomfield and Shelby Weaver. Holders of Class 10 Claims shall not be entitled to receive any payments under the Plan until all Allowed Claims are paid in full.

The Class 10 Subordinated Claims of Insiders are Impaired under the Plan.

5.19    <u>Equity Interest Holders</u>. (Class 11) – The Class 11 Equity Interest Holders consist of the equity interests held by the shareholders of the Debtor.  The Class 11 Equity Interest Holders shall retain their Equity Interest in the Reorganized Debtor.

5.20    <u>Payments to the United States Trustee</u>. The Reorganized Debtor shall pay all quarterly fees of the United States Trustee until entry of a Final Decree in the Chapter 11 Case. Further, the Debtor shall pay all such fees, including any fees arising pursuant to 28 U.S.C. § 1930, as determined by the Court, on or before the Effective Date of the Plan.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

6.1    <u>Continued Operations of Couture Hotel Corporation</u>.  The Reorganized Debtor shall operate as the company managing the Dallas Hotel and Corpus Hotel, following the Effective Date.  The Reorganized Debtor shall only be required to dedicate sufficient revenues to fund all obligations contained herein.  Further, the Reorganized Debtor shall within thirty (30) days of the Effective Date amend its bylaws and/or charter to include any applicable provisions necessary to conform to 11 U.S.C. §1123(a)(6).

6.2     Guarantor Joint Proponent Property. As additional collateral for the Allowed Claims of Mansa, John Blomfield, as a purported guarantor of the debt that is the subject of those Claims, will agree (by affixing is signature to this Plan) to pledge his interest in the Guarantor Joint Plan Proponent Property, as specified in Section 5.9.4, and take such actions as are reasonable and necessary, including executing modifications to the trust and other documents, to allow Mansa to perfect legally enforceable security interests granted herein in compliance with relevant law.

6.3     Class 9 Reserve Account. On or before the Effective Date, the Reorganized Debtor shall setup the Class 9 Reserve Account. On or before the date that is ninety (90) days after the Effective Date, the Reorganized Debtor shall transfer to the Class 9 Reserve Account an amount equal to 25% of the estimated amount of the Class 9 Distribution to be delivered and distributed on the first anniversary of the Effective Date. The Reorganized Debtor shall make subsequent transfers of 25% of the estimated amount on or before the date that is 180 days, 270 days and 365 days from the Effective Date such that on the first anniversary of the Effective Date, the Class 9 Reserve Account will hold sufficient funds to make the Class 9 Distribution. For the next three years following the first anniversary of the Effective Date, the Reorganized shall make similar quarterly transfers of 25% of the estimated amount of the next Class 9 Distribution on the 90th, 180th, 270th and 365th day of each anniversary, such that each Class 9 Distribution is fully funded on the anniversary of the Effective Date.

6.4     Post-Effective Date Management.  The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Montana, in which it is incorporated, for the purposes of operating and managing the Dallas Hotel and Corpus Hotel and satisfying its obligations under the Plan.  The Reorganized Debtor shall continue to be owned by the Holders of the Equity Interests. The Reorganized Debtor shall continue to be managed by John Blomfield. For the first five years following the Effective Date, John Blomfield, Shelby Weaver, and Brittany Blomfield shall receive no salary. However, notwithstanding the foregoing, John Blomfield shall be entitled to the Management Fee described in Section 6.5.

6.5     Management Fee.   For each month following the Effective Date, the Reorganized Debtor shall incur a management fee equal to four percent (4%) of the monthly Gross Revenues of the Reorganized Debtor (the "Management Fee"). The Management Fee shall be paid monthly to John Blomfield, or such other manager, or company, the Reorganized Debtor may hire to manage and operate the Dallas Hotel and Corpus Hotel. However, under no circumstances shall the Management Fee be paid or disbursed unless each of the monthly Plan obligations specified in Sections 5.7, 5.8 and 5.9 have been met. Further, no Management Fee shall be paid unless the Reorganized Debtor is current on its transfers to the Class 9 Reserve Account specified in Section 6.3. Finally, the Management Fee shall be withheld and not disbursed unless the monthly payment obligation under the Propel Corpus Exit Note and Propel Dallas Exit Note are paid.

6.6     Distributions to Equity Interest Holders.   No distributions shall be made to Equity Interest Holders on account of their Equity Interest until the Reorganized Debtor has completed the proposed treatment of all Claims provided for and treated in this Plan. Notwithstanding the foregoing, and for the sake of clarity, nothing in this paragraph shall modify the provisions related to the Management Fee provided for in Section 6.5.

6.7    <u>Corporate Action</u>.    The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation.    The management of the Reorganized Debtor is authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor and Reorganized Debtor.

6.7.1    <u>Prohibition Against Issuance of Nonvoting Equity Securities</u>.    On or before the Effective Date, the Debtor shall amend and include within its charter a prohibition against the issuance of nonvoting equity securities.

6.8    <u>Documents</u>.  All documents necessary for the implementation of this Plan shall be executed by all necessary parties in interest on or before the Effective Date, unless another date is provided for a particular document or documents under this Plan.  To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination.  Upon the Effective Date, or as soon as practicable thereafter, the Court shall have resolved said issues and all such documents shall be binding on the Debtor, the Creditors, and all other parties hereto.

6.9    <u>Re-Vesting of Assets</u>. On the Effective Date, except as otherwise provided in this Plan, title to all of the Debtor's assets shall vest in the Reorganized Debtor free and clear of all liens, claims, Causes of Action, interests, security interests and other encumbrances other than those provided herein or granted by Debtor on or after the Effective Date and without further order of the Bankruptcy Court. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire and dispose of its assets free of any restriction of the Bankruptcy Code unless otherwise provided in this Plan or under applicable state law.

6.10    <u>Incorporation of Bankruptcy Rule 9019.</u>    To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.  More specifically, and without limiting this provision, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 to settle any Claims and the treatment provided for them in this Plan.

6.11    <u>Incorporation of Valuation Motion</u>.  To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including the value of any lien, security interest, or encumbrance treated by this Plan; *provided, however,* that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Chapter 11 Case.

6.12    Automatic Stay.  The automatic stay provided in Section 362 of the Bankruptcy Code, shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order, and shall terminate on the Effective Date.

6.13    Conditions Precedent to Effective Date.    The occurrence of the Effective Date of the Plan is subject to satisfaction of the following conditions precedent:

(a)    Confirmation Order.    The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Case and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

(b)    Execution and Delivery of Other Documents.    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of this Plan shall have been effectuated and, in each case (i) shall have been approved, and (ii) all conditions to their effectiveness shall have been satisfied or waived

(c)    Consents.  All authorizations, consents and approvals determined by the Reorganized Debtor to be necessary to implement the terms of this Plan shall have been obtained.

6.14    Waiver of Conditions Precedent.    Each of the conditions precedent in Section 6.13 hereof may be waived, in whole or in part, by the Reorganized Debtor (with the consent of the affected counter-party) without notice or order of the Bankruptcy Court.

6.15    Effect of Failure of Conditions.    If the conditions specified in Section 6.13 hereof have not been satisfied or waived in the manner provided in Section 6.14 then (i) the Confirmation Order shall be of no further force and effect; (ii) the Reorganized Debtor and all Holders of Claims and Equity Interests in the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Reorganized Debtor's obligations with respect to the Claims and Equity Interests shall remain unaffected by the Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor and the Plan shall be deemed withdrawn.

6.16    Reservation of Rights.  The Plan shall have no force or effect unless and until the Effective Date occurs.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

6.17    Substantial Consummation.    Substantial consummation of the Plan under Section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

6.18     Rights Under 1129(b).  **The Debtor hereby gives notice of its intent to seek confirmation under the cram down provisions of Section 1129(b) of the Bankruptcy Code.**

6.19     Retention of Causes of Action.   Unless expressly released otherwise by this Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability,  duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.

Unless expressly released by this Plan or by an order of the Bankruptcy Court, the Debtor may hold claims against a holder of a Claim or Equity Interest, including but not limited, the following claims and Causes of Action, all of which shall be preserved:

- Any discharge or dischargeability causes of action under sections 523 or 727 of the Bankruptcy Code related to any claim or Cause of Action reserved and preserved under the Plan and this Disclosures Statement;
- Fraudulent transfer and other avoidance claims arising under sections 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;
- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;
- Claims and Causes of Action asserted in current litigation, whether commenced pre- or post-petition;
- Counterclaims asserted in current litigation;
- Any and all counterclaims and claims, whether asserted or not asserted, including any Cause of Action listed above, including but not limited to, breach of contract, unjust enrichment, promissory estoppel, fraud and fraud in the inducement against ThyssenKrupp Elevator;
- Any and all claims and Causes of Action, including any Cause of Action listed above, including but not limited to violations of rules, regulations and statutes related to, or in connection with, procurement or proposed procurement, including the Tucker Act, 28 U.S.C. § 1491, Competition in Contracting Act, 10 U.S.C. §

2302 et seq., Administrative Procedure Act, 5 U.S.C. § 701 et seq., Equal Access to Justice Act, 28 U.S.C. § 2412, and Federal Acquisition Regulation, 48 C.F.R. § 1.000 et seq., against the United States Government, United States Department of Defense, United States Department of the Air Force, Nellis Air Force Base, Nellis Air Force Base Lodging, and any agency or official of the United States acting in his or her official capacity, including Cathy Fierstein;

- Any and all claims and Causes of Action, including any listed above, against Robert Jima.

### ARTICLE VII
### PROVISIONS FOR THE ASSUMPTION OF
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     General Assumption of Executory Contracts.  All executory contracts and unexpired leases of the Debtor (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly rejected on or before thirty (30) days after the Confirmation Date or not otherwise specifically treated in this Plan, or in the Confirmation Order, shall be deemed to have been assumed on the Confirmation Date.  The Bankruptcy Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to Section 365 of the Bankruptcy Code. Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor, or the Debtor-in-Possession that such contract or lease is an executory contract or unexpired lease of the Debtor, or the Debtor-in-Possession has any liability thereunder.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving assumption under Section 365 of the Bankruptcy Code as of the Effective Date.  The Reorganized Debtor shall continue to have all rights of assignment contained in 11 U.S.C. § 365 of any executory contract or unexpired lease following Confirmation of this Plan.

7.2     Cure of Defaults.  Unless otherwise provided for in the Plan, the Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of Sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court upon the earlier of (a) 30 days after express notice is given of the Debtor's intent to assume such Executory Contract or (b) within thirty (30) days after the Confirmation Date.  Such proof of claim shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtor may pay such amount as may be agreed upon between the Reorganized Debtor and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within thirty (30) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Reorganized Debtor files, within thirty (30) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the

Reorganized Debtor on the later of: (i) ten (10) Business Days after the expiration of the thirty day (30) period for filing an objection to any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, within ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

7.3     Claims for Damages.  Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtor such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 9 General Unsecured Claims.  Any Claim not filed within such time will be forever barred from assertion against the Debtor or its Estate.

7.4     Assumption of HJI Corpus Franchise Agreement.

7.4.1     Assumption.     On the Effective Date, the HJI Corpus Franchise Agreement shall be assumed. The Confirmation Order shall constitute an order approving the assumption under the Plan.

7.4.2     Cure Claim.     Except to the extent HJI agrees otherwise, in accordance with Section 365 of the Bankruptcy Code, on or before the Effective Date, the Debtor shall cure all monetary and non-monetary defaults under the HJI Corpus Franchise Agreement, if any. More specifically, the HJI Corpus Claim shall serve as an Allowed Cure Claim related to the assumption of the HJI Corpus Franchise Agreement. Any dispute regarding the HJI Corpus Claim that cannot be resolved between HJI and the Debtor shall be determined by the Bankruptcy Court at the Confirmation Hearing.

7.5     Rejection of HJI Las Vegas Franchise Agreement.

7.5.1     Rejection.  On the Effective Date, the HJI Las Vegas Franchise Agreement shall be rejected. The Confirmation Order shall constitute an order approving the rejection under the Plan.

7.5.2     Rejection Claim.     In addition to the HJI Las Vegas Claim, HJI shall have an Allowed Claim in the amount of $40,000 (the "HJI Rejection Damages Claim"). The HJI Rejection Damages Claims shall be treated in accordance with Section 5.12.2 of the Plan.

7.6     Assumption of Dallas Franchise Agreement.

7.6.1     Assumption.     On the Effective Date, the Dallas Franchise Agreement shall be assumed. The Confirmation Order shall constitute an order approving the assumption under the Plan.

7.6.2  <u>Cure Claim</u>.   Except to the extent WHR agrees otherwise, in accordance with Section 365 of the Bankruptcy Code, on or before the Effective Date, the Debtor shall cure all monetary and non-monetary defaults under the Dallas Franchise Agreement, if any. More specifically, the WHR Cure Claim shall serve as an Allowed Cure Claim related to the assumption of the Dallas Franchise Agreement. Any dispute regarding the WHR Cure Claim that cannot be resolved between WHR and the Debtor shall be determined by the Bankruptcy Court at the Confirmation Hearing.

7.7  <u>Assumption of Wells Fargo Bus Leases</u>

7.7.1  <u>Assumption</u>.   On the Effective Date, the Wells Fargo Ford Lease and Wells Fargo Starcraft Lease shall be assumed. The Confirmation Order shall constitute an order approving the assumption under the Plan.

7.7.2  <u>Cure Claim</u>.   Wells Fargo shall have an Allowed Cure Claim arising out of the assumption of the Wells Fargo Ford Lease and Wells Fargo Starcraft Lease in the amount of $19,204.00 (the "Well Fargo Cure Claim"). The Wells Fargo Cure Claim shall be paid $240.05 on or before the Effective Date of the Plan and the remainder shall be paid pursuant to the modifications described in sections 7.7.3 and 7.7.4.

7.7.3  <u>Wells Fargo Ford Lease Modification</u>.   The Wells Fargo Ford Lease shall be modified to extend the Initial Term of the lease for four months. Further, the Reorganized Debtor shall make an equal monthly payment of $1,892.00 for each of the additional four months added to the Wells Fargo Ford Lease.

7.7.4  <u>Wells Fargo Starcraft Lease Modification</u>.   The Wells Fargo Starcraft Lease shall be modified to extend the Initial Term of the lease for four months. Further, the Reorganized Debtor shall make an equal monthly payment of $2,909.00 for each of the additional four months added to the Wells Fargo Starcraft Lease.

7.8  <u>Assumption of US Bank Equipment Lease</u>.

7.8.1  <u>Assumption</u>.   On the Effective Date, the US Bank Equipment Lease shall be assumed.  The Confirmation Order shall constitute an order approving the assumption under the Plan.  The US Bank Equipment Lease is retained by the Estate and the Reorganized Debtor pursuant to this Plan.

7.8.2  <u>Cure Claim</u>.   Except to the extent that US Bank agrees otherwise, in accordance with Section 365 of the Bankruptcy Code, the Reorganized Debtor shall cure all monetary and non-monetary defaults under the US Bank Equipment Lease, if any. Such defaults shall be stated in an "Assumption Cure Proof of Claim" and shall be subject to the provisions of Section 7.2 of this Plan, except that any "Assumption Cure Proof of Claim" filed by US Bank shall be filed before the date that is thirty (30) days after the Confirmation Date.  Any Allowed Cure Claim held by US Bank shall be paid on the later of (i) the Effective Date and (ii) ten (10) Business Days after entry of a Final Order granting and determining the amount of any such Allowed Cure Claim.

7.9 <u>Assumption of Element Equipment Lease</u>.

     7.9.1 <u>Assumption</u>. On the Effective Date, the Element Equipment Lease shall be assumed. The Confirmation Order shall constitute an order approving the assumption under the Plan. The Element Equipment Lease is retained by the Estate and the Reorganized Debtor pursuant to this Plan.

     7.9.2 <u>Cure Claim</u>. Except to the extent that Element Financial agrees otherwise, in accordance with Section 365 of the Bankruptcy Code, the Reorganized Debtor shall cure all monetary and non-monetary defaults under the Element Equipment Lease, if any. Such defaults shall be stated in an "Assumption Cure Proof of Claim" and shall be subject to the provisions of Section 7.2 of this Plan, except that any "Assumption Cure Proof of Claim" filed by Element Financial shall be filed before the date that is thirty (30) days after the Confirmation Date. Any Allowed Cure Claim held by Element Financial shall be paid on the later of (i) the Effective Date and (ii) ten (10) Business Days after entry of a Final Order granting and determining the amount of any such Allowed Cure Claim.

7.10 <u>Reservation of Rights</u>. The Debtor reserves the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to sixty (60) days after the Confirmation Date.

7.11 <u>Assumption of Oracle Agreement</u>.

     7.11.1 <u>Assumption</u>. On the Effective Date, the Oracle Agreement shall be assumed. The Confirmation Order shall constitute an order approving the assumption under the Plan. The Oracle Agreement shall be retained by the Reorganized Debtor pursuant to the Plan.

     7.11.2 <u>Cure Claim</u>. Oracle America, Inc. shall have an Allowed Cure Claim in an amount of $34,755.88, which claim shall be paid on or before the Effective Date of the Plan.

## ARTICLE VIII
## RESOLUTION OF UNDETERMINED CLAIMS

8.1 <u>Standing</u>. In addition to all other parties that may otherwise have standing to object to Claims, the Reorganized Debtor shall have specific standing to object to the allowance of said Claims.

8.2 <u>Effect of Bar Date</u>. In accordance with Federal Rule of Bankruptcy Procedure 3003(c), any entity, person or Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed claims, and did not file a proof of claim before the Bar Date, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution.

8.3 _Amendments to Claims; Claims Filed After the Confirmation Date_. Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Confirmation Date without the prior written authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Reorganized Debtor. Notwithstanding the foregoing, and for the avoidance of doubt, the holder of a Secured Tax Claim may amend any timely filed proof of claim, where such proof of claim includes an estimated amount for _ad valorem_ taxes, in order to assert actual taxes for said year(s), at any time prior to substantial consummation of the Plan.

8.4 _Objection Deadline_. Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtor may file with the Bankruptcy Court objections to Claims and interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains, but upon no other party or party-in-interest. Unless arising from an Avoidance Action, any proof of Claim filed after the Confirmation Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date. Nothing in this Plan extends the Bar Date set in the Chapter 11 Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has. Unless otherwise ordered by the Court, the Reorganized Debtor shall litigate to judgment, settle or withdraw objections to contested Claims.

8.5 _Creditor Response to Objection_. With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and the objecting party no later than thirty (30) days from the date of service of any such objection. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

8.6 _No Payment Pending Allowance_. Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim as provided in the Plan.

8.7 _Allowance of Claims_. At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan. Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim. In the event that the Reorganized Debtor makes any distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and

be due and payable on the first annual payment date following the date of the Order allowing such Claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

8.8     Estimation of Claims. The Debtor or the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated, compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE IX
## DISTRIBUTION PROCEDURES

9.1     Date of Distributions. Distributions shall be made on the date specified in Articles III, IV, V and VI with respect to each Allowed Claim or Allowed Equity Interest.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be complete on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

9.2     Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. **Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding any other tax obligations, on account of such distribution.** Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

9.3     Unclaimed Distributions.     In the event that any distribution to a Holder is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such Holder, at which time

such distribution shall be made to such Holder without interest from the original distribution date through the new distribution date; *provided that* such distributions shall be deemed unclaimed property under Section 347 of the Bankruptcy Code at the expiration of one year from the delivery thereof. After such date, all unclaimed property shall revert to the Reorganized Debtor, and the Claim of any party, other than the Reorganized Debtor, to such property or interest in the property shall be discharged and forever barred.

## ARTICLE X
## MODIFICATION OF THE PLAN

10.1   <u>Amendments Prior to Confirmation Date</u>. The Debtor may modify the Plan prior to Confirmation pursuant to Section 1127(a) of the Bankruptcy Code, and the Plan, as amended shall become the new Plan of Reorganization.

10.2   <u>Amendments After Confirmation Date</u>. The Debtor may modify the Plan before its substantial consummation, *provided that* the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

10.3   <u>Effect on Claims</u>. A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such Holder changes its previous acceptance or rejection

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1   <u>Purposes</u>. Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

    i.    to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or interest;

    ii.    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

    iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

    iv.    to hear and determine any and all actions initiated by the Reorganized Debtor, whether by motion, complaint or otherwise;

**FIFTH AMENDED AMENDED PLAN OF REORGANIZATION OF COUTURE HOTEL CORPORATION – PAGE 41**

v.      to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi.     to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii.    to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

viii.   to allow, disallow, determine, liquidate or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

ix.     to enter such Orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate Orders to protect the Debtor from creditor actions;

x.      to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi.     to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii.    to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

xiii.   to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

xiv.    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv.     to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

**FIFTH AMENDED AMENDED PLAN OF REORGANIZATION OF COUTURE HOTEL CORPORATION – PAGE 42**

xvi.    to enter a Final Order and final decree closing the Chapter 11 Case.

11.2    <u>Exclusive Jurisdiction</u>.  The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

11.3    <u>Abstention</u>.  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in this Article XI, this Article XI shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII
## GENERAL PROVISIONS

12.1    <u>Certain Rights Unaffected</u>.  Except as otherwise provided herein and as may have been created within Inter-Creditor Agreement, any rights or obligations which the Debtor's Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

12.2    <u>Headings</u>.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretations of this Plan.

12.3    <u>Severability</u>.  If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.4    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

12.5    <u>Successors and Assigns</u>.  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

12.6    <u>Discharge of Claims</u>.  Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor and the Reorganized Debtor or any of its assets or properties to the extent permitted by Section 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the

Debtor and the Reorganized Debtor shall be, and shall be deemed to be discharged; and all Holders of Claims shall be precluded from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

12.7    Discharge of Debtor.  Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by Section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.  Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a Claim discharged.

12.8    Exculpations.  The Debtor's professionals shall not have or incur any liability to any Holder of a Claim for any act, event, or omission in connection with, or arising out of, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

12.9    Injunctive Relief.  Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to Section 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtor in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

Dated: January 5, 2016

**Couture Hotel Corporation**

By:    /s/ John Blomfield
          Name: John Blomfield
          Title: Secretary & Treasurer

**John Blomfield, Individually**

/s/ John Blomfield

**Shelby Weaver, Individually**

/s/ Shelby Weaver

OF COUNSEL:

Gerrit M. Pronske
State Bar No. 16351640
Jason P. Kathman
State Bar No. 24070036
PRONSKE GOOLSBY & KATHMAN, P.C.
901 Main Street, Suite 610
Dallas, Texas 75202
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pgkpc.com
Email: jkathman@pgkpc.com